GLORIA P. CRAWFORD, Plaintiff-Appellant, *v.* OLIVER CRAWFORD, Defendant-Appellee.

First District (4th Division)   No. 61687

Opinion filed June 9, 1976.

Herbert A. Glieberman, of Chicago (Jerome Marvin Kaplan, of counsel), for appellant.

Sidley & Austin, of Chicago (Jerrold E. Fink, of counsel), for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The plaintiff, Gloria P. Crawford, commenced an action for divorce against the defendant, Oliver Crawford, on the basis of the latter's mental cruelty. In response to the plaintiff's complaint for divorce, the defendant not only submitted an answer which sought a dismissal of his estranged spouse's complaint for want of equity, but he also filed a countercomplaint for divorce. After this cause was set for trial, the parties purportedly entered into an oral agreement settling and disposing of the rights of alimony and property arising out of the matrimonial relationship. Moreover, on the date this oral settlement agreement was allegedly entered, a prove-up hearing was conducted in which subsequent to (1) counsel for the plaintiff eliciting testimony from his client concerning the terms of the agreement and (2) the defendant withdrawing his countercomplaint, the trial court granted the plaintiff a divorce.

Prior to the entry of the divorce decree, however, the plaintiff retained new counsel, who, in addition to filing a substitution of attorneys, submitted petitions to stay the proceedings and return the case to the trial call. At a hearing conducted on these petitions, the plaintiff denied that her former attorney ever consulted or advised her of the terms of the oral settlement agreement before she testified at the prove-up hearing. She further indicated that she did not comprehend the significance of this prior hearing. Upon completion of the evidence presented by both sides, the trial court concluded that the plaintiff had voluntarily entered in the oral settlement agreement and fully understood its terms. The court then incorporated, over the plaintiff's objections, the provisions of said agreement into a consent decree dissolving the parties' marital relationship.

On appeal, the plaintiff contends that the trial court should not have entered the divorce decree since (1) the element of consent between the parties was never present so as to make the alleged consent decree valid; (2) a settlement which must be reduced to writing before being considered final is not final until the writing is, in fact, executed; and (3) the trial court lacked jurisdiction to hear the case after it had been dismissed for want of prosecution.

A review of the record reveals that on September 18, 1971, the approximately 26-year-old marriage between the plaintiff and the defendant resulted in the institution by the former of divorce proceedings. Besides designating mental cruelty as the grounds for

divorce, the plaintiff's complaint also related that (1) the parties had a son, age 22 and a daughter, age 18; (2) the plaintiff was unemployed, without any source of income or funds with which to support herself or her children; and (3) the defendant was a physician with ample resources to support her as well as their children. Subsequent to being served with summons on June 8, 1972, the defendant filed an answer to the plaintiff's complaint for divorce in which he maintained that said complaint failed to state a cause of action and that it should be dismissed for want of equity. He further submitted a countercomplaint for divorce on August 23, 1973, which alleged mental cruelty as the basis for the termination of the parties' marital union.

After various continuances, this cause was set for trial on the contested trial call on July 10, 1974. On that date, counsel for the plaintiff informed the trial court that the parties arrived at an oral agreement settling and disposing of the alimony and property rights stemming from the marital relationship. The defendant then withdrew his countercomplaint for divorce, and a prove-up hearing ensued in which testimony was elicited from the plaintiff and the defendant. The plaintiff testified that pursuant to this oral settlement agreement, (1) the family home was to be sold and the net proceeds of the sale were to be divided equally between the parties and (2) the defendant would pay alimony in the form of $700 per month for 121 months with the further provision that if she remarried after five years from the date of the decree, any unpaid amount would abate. She further stated, in response to her own counsel's inquiry, that she was not subjected to any coercion or duress to enter this agreement.

At the conclusion of the plaintiff's testimony, a colloquy between the trial court and the parties' counsels arose over the payment of the plaintiff's attorney's fees. Besides informing the court that his client had no income, counsel for the plaintiff related that the defendant had a gross earnings of $87,994 for the year ending September 30, 1973, which included a gross salary of $44,800 as well as the placement of $10,500 into an employee's pension and profit-sharing plan. Subsequent to the defendant confirming these gross salary and pension plan figures on cross-examination, the trial court (1) awarded the plaintiff's attorney a fee of $2500 to be paid by the defendant and (2) orally granted a judgment for divorce.

After the prove-up hearing, the plaintiff discharged her attorney and retained new counsel who sought to preclude the entry of the divorce decree by filing a substitution of attorneys and separate petitions which respectively sought to stay the proceedings and return the case to the trial call. On August 21, 1974, the trial court responded to the plaintiff's petition to return the case to the trial call by not only ordering the defendant to prepare and submit to the plaintiff's counsel a proposed decree in

accordance with the proceedings conducted on July 10, 1974, but it also set a hearing for September 23, 1974 on both petitions submitted by the plaintiff. Moreover, on September 16, 1974, an order was entered that (1) gave the plaintiff leave to file an emergency petition to stay the entry of the divorce decree and (2) postponed the hearing on the plaintiff's petitions to October 21, 1974. However, without notice to the parties at bar nor to the trial judge hearing this matter, the presiding judge of the divorce division of the circuit court of Cook County entered an order on September 25, 1974, dismissing this cause for want of prosecution.

Despite the above edict and the fact that a subsequent order vacating this dismissal was never entered, the litigious efforts between the parties continued. In fact, on November 22, 1974, the same presiding judge who previously dismissed this cause accepted the plaintiff's motion for support and set such matter for hearing on December 4, 1974. Moreover, on December 19, 1974, the plaintiff submitted an emergency petition as well as memorandum of law which sought to set aside the oral property settlement agreement. After the defendant presented, on the same date, his motion to strike the plaintiff's emergency petition and all other petitions previously filed on August 21, 1974, the trial court conducted a hearing to adjudicate the contentions raised by such petitions.

The plaintiff was first to take the stand and gave a definitive account of what transpired before, during, and after the prove-up hearing conducted on July 10, 1974. She related that prior to testifying on July 10, 1974, she was neither consulted nor advised as to the nature of the oral settlement. Moreover, she told her former counsel that $700 per month for alimony was inadequate and unacceptable. However, she failed to raise an objection to this amount on the witness stand because she said she did not know that this subject would be mentioned. Besides relating that she was nervous and did not understand the significance of the prove-up hearing, the plaintiff testified that when she departed the witness stand, she asked her attorney if she could register her objections to the settlement with the trial judge, but was informed that he would have to arrange it.

Following the cross-examination of the plaintiff, the calling of the defendant as a witness, and the respective closing arguments of the parties' counsels, the trial court reviewed what transpired on July 10, 1974, and concluded that there was no coercion nor duress imposed upon the plaintiff to enter the oral settlement agreement. The court then, over the plaintiff's objection, entered a consent decree for divorce pursuant to the terms of the oral agreement. On January 14, 1975, a notice of appeal was filed with the clerk of the circuit court of Cook County. Thereafter, the defendant submitted on August 5, 1975,, a petition to expunge the order entered on September 25, 1975, that dismissed this cause for want

of prosecution. The presiding judge of the divorce division denied such request on the basis that he lacked jurisdiction to consider such petition since the case was pending before this reviewing court.

While the plaintiff proffers three issues for consideration, we believe that the crux of the instant controversy revolves around whether a party to an oral settlement agreement, which subsequently forms the basis of a consent decree for divorce, can set aside said decree because of her dissatisfaction with the terms of the settlement agreement. In seeking an affirmative response to this question, the plaintiff maintains that she was not a consenting party to the purported oral settlement agreement incorporated into the divorce decree not did she have knowledge of all of the facts prior to the entry into this agreement. Rather, her apparent satisfaction with the terms of the agreement at the prove-up hearing was not deliberate, but caused by her former counsel's failure to adequately advise her as to the terms of the agreement as well as her own inability to comprehend the nature of such proceedings.

In contradistinction to the plaintiff's assertion, the defendant argues that the decree for divorce should be upheld since the record amply demonstrates that the plaintiff's consent was voluntarily and understandingly given. To buttress such position, heavy reliance is placed on two decisions (*Lagen v. Lagen*, 14 Ill. App. 3d 74, 302 N.E.2d 201; *Filko v. Filko*, 127 Ill. App. 2d 10, 262 N.E.2d 88) wherein the respective reviewing courts rejected the wife's attempt to avoid the divorce decree which had been based upon her prior oral agreement that was made in open court. Moreover, the defendant strenuously argues that even disregarding the plaintiff's consent to the agreement, the decree was still eminently justified in light of the trial court's extensive review of the evidence. Although we do not controvert the fact that the trial court comprehensively reviewed the evidence surrounding this marital entanglement, we are of the opinion that neither assertions proffered by the defendant warrant an affirmance of the divorce decree.

■■ While it is well settled in Illinois that the law looks with favor upon the amicable settlement of property rights between a husband and wife prior to their divorce (*e.g., Bergstrom v. Kuhn*, 17 Ill. App. 3d 135, 307 N.E.2d 667 (abstract opinion); *Nogle v. Nogle*, 53 Ill. App. 2d 457, 462, 202 N.E.2d 683, 686; see *Gold v. Gold*, 17 Ill. App. 3d 11, 14, 308 N.E.2d 75, 77), it has also been held that a settlement agreement will be set aside and vacated if said agreement is procured by fraud, coercion, or if contrary to any rule of law, public policy, or morals. (*E.g., James v. James*, 14 Ill. 2d 295, 305, 152 N.E.2d 582, 587; *Gaddis v. Gaddis*, 20 Ill. App. 3d 267, 270, 314 N.E.2d 627, 630-31.) Moreover, in ascertaining whether a particular settlement agreement violates public policy, reviewing courts not only focus on whether such contracts are free of

actual fraud and coercion, but emphasis is also placed on whether they are reasonably fair and sufficient in light of the station in life and the circumstances of the parties. *E.g., James v. James*, 14 Ill. 2d 295, 305, 152 N.E.2d 582, 587; see *Guyton v. Guyton*, 17 Ill. 2d 439, 445, 162 N.E.2d 832, 835.

Applying these legal precepts to the case at bar, we believe that public policy required the instant property settlement agreement be set aside for its manifest inequity and unfairness. Although the record reveals that the agreement was preceded by negotiations between the parties' counsels, it is devoid of any evidence demonstrating that the plaintiff was consulted or advised by her former attorney, prior to testifying at the prove-up hearing, of the terms of the property and alimony settlement. On the contrary, she testified at the hearing conducted on December 19, 1974, that prior to taking the stand, (1) she never agreed in principle to the terms of the oral settlement and (2) she informed her former attorney that the alimony payments of $700 a month would be inadequate.

Besides this absence of consultation about and agreement to the terms of the oral settlement by the plaintiff's former counsel and the plaintiff respectively, the latter's conduct both during and subsequent to the prove-up hearing also exemplifies her dissatisfaction with said oral disposition of property and alimony rights. While the plaintiff testified at the prove-up hearing that she did arrive at a settlement agreement with the defendant and that no coercion nor duress was exerted upon her to enter this settlement, she later stated at the December 19, 1974, hearing that she did not understand the significance and meaning of her prior testimony. Moreover, once she departed from the stand at the prove-up hearing, she objected to her attorney concerning the terms of the oral agreement and thereafter immediately retained a new attorney who arduously endeavored to preclude the entry of a divorce decree based on the contoverted settlement agreement.

In light of such evidence, we believe that the plaintiff, who attempted to resolve her marital rights in good faith, should not be forced to accept the oral property and alimony settlement. It is our opinion that the settlement of property and alimony rights between married persons, particularly in situations involving long matrimonial relationships, cannot be concluded by the parties' oral consent when it is diligently challenged by one spouse before a decree has been entered. While we agree with the defendant that the prove-up hearing was not an idle exercise and should not be disregarded, we also feel that (1) the instant settlement agreement was hastily contrived immediately before the prove-up hearing and (2) the divorce decree dissolving the 26-year-old marital union between the parties was based on an oral accord which the plaintiff not only expressed her aversion to, but immediately disavowed her prior consent to said compact. We therefore conclude that in all fairness, the plaintiff should

have her day in court and the oral settlement disposing of her property and alimony interests should have been set aside and vacated.

We further believe that the decisions (*Lagen v. Lagen*, 14 Ill. App. 3d 74, 302 N.E.2d 201; *Filko v. Filko*, 127 Ill. App. 2d 10, 262 N.E.2d 88) which the defendant principally relies on in support of his position do not warrant an affirmance of the instant divorce decree since each opinion is factually inapposite to the one at bar. Although both cases cited by the defendant as well as the instant case involve an attempt by the respective wife to avoid a decree for divorce that was based upon an oral settlement agreement, the reviewing court in *Lagen* was confronted with an action that was commenced under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72) wherein the plaintiff-wife sought to vacate the judgment for divorce on the basis of her husband's fraudulent act of concealing assets. In the present case, however, the plaintiff did not attack, pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72) the validity of the decree *after* it had already been entered. Rather, she attempted to prevent the entry of the decree on the grounds of coercion and unfairness.

In addition to the disparity in circumstances giving rise to the decision in *Lagen*, the facts in *Filko* are also distinguishable from the instant case. Whereas the oral settlement agreement was hastily contrived and immediately disavowed by the plaintiff in the case at bar, the parties in *Filko* negotiated for approximately two years before reaching an oral agreement. Moreover, contrary to the present case where the plaintiff was not consulted nor advised of the agreement on the day of the prove-up hearing, the hearing in *Filko* was preceded by six hours of conference in which the parties, their attorneys, and even the trial judge participated in arriving at an oral settlement agreement. Thus, based on the above factual divergence between the instant case on one hand and the decisions in *Lagen* and *Filko* on the other, we believe that neither of the latter two opinions is sufficiently analogous to dissuade our decision not to sustain the decree for divorce.

■■ Finally, we are of the opinion that the presiding judge of the circuit court of Cook County inadvertently entered the September 15, 1974, order dismissing this cause for want of prosecution. While it has uniformly been held that courts have the inherent power to dismiss actions for want of prosecution in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the progress of trial calendars (*e.g., Ryan v. Dixon*, 28 Ill. App. 3d 463, 466, 328 N.E.2d 672, 674; *Bender v. Schallerer*, 9 Ill. App. 3d 951, 952-53, 293 N.E.2d 411, 413), it must be remembered that a dismissal of a valid cause of action is error unless the plaintiff is guilty of an inexcusable delay in litigating the controverted matter. (*Geraty v. Carbona Products Co.*, 16 Ill. App. 3d

702, 705, 306 N.E.2d 544, 547.) Considering such tenets in light of the litigious efforts of the parties at bar, it is evident that the presiding judge mistakenly dismissed this cause for want of prosecution. As revealed in the record, the plaintiff engaged in an abundance of legal activity from the time of the prove-up hearing to September 25, 1974, when the order of dismissal was entered. For example, during this time span, the plaintiff, through her newly appointed counsel, filed separate petitions to (1) stay the prior proceedings, (2) return the case to the trial call, and (3) stay the entry of the decree submitted by counsel for the defendant as well as set the various pending petitions for a hearing on October 21, 1974.

Besides the concerted efforts of the plaintiff and the trial court, who granted the plaintiff's request for an October 21, 1974, hearing on all pending petitions, to have this matter adjudicated, the conduct of the presiding judge of the divorce division subsequent to dismissing this cause also evinces that his September 25, 1974, order was erroneously entered. In the first place, the presiding judge's order dismissing the cause was entered without either prior or subsequent notice to the parties or to the trial judge before whom the case was then actively pending. Moreover, on November 19, 1974, the same presiding judge not only accepted the plaintiff's motion for support, which informed him that the case was still pending, but he also set a hearing on the matter of support for December 4, 1974. Therefore, in view of the above evidence, it is apparent that the presiding judge incorrectly entered the dismissal for want of prosecution which could have been alleviated by a careful perusal of the file on September 25, 1974.

Accordingly, this cause is remanded with directions that the lower court determine whether the dismissal of the cause for want of prosecution should be set side. If the court so finds, then the decree of divorce is reversed and remanded with directions to hear the matter on the merits.

Reversed and remanded with directions.

ADESKO and DIERINGER, JJ., concur.