*In re* MARRIAGE OF DENISE M. BLACK, Petitioner-Appellant, and JEFFREY L. BLACK, Respondent-Appellee.

Second District   No. 84—192

Opinion filed May 1, 1985.

Timothy P. Whelan and Charmaine Tellefsen, both of Locke, Tellefsen & Learn, of Glen Ellyn, for appellant.

Andrew M. Carter, of William J. Stogsdill, Jr., Ltd., of Glen Ellyn, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

Petitioner, Denise M. Black, filed a petition for dissolution of her marriage to respondent, Jeffrey L. Black, in November 1981. In September 1982, Denise filed a petition for temporary custody and child support for the parties' minor child. On the same date, the maternal grandmother and paternal grandparents of the child filed petitions to intervene and for custody. The court granted leave to intervene to all the grandparents. Following a hearing on the petition for temporary custody, the court found that neither of the parents was then able to provide for the best interests of the child, then age 3½, and ordered temporary custody awarded to the paternal grandparents, with both parents to pay weekly child support. The cause was set for trial on November 28, 1983, at which time Denise's counsel sought a continuance or, in the alternative, a bifurcation of the trial to reserve the issue of the psychological evaluation of Denise. Both motions were denied. Denise's counsel then sought a voluntary dismissal of the petition for dissolution and the petition for custody. All other counsel objected because of the intervening petitions by the grandparents for

custody of the child, which was the primary concern of all the parties. The court denied Denise's motion for a voluntary dismissal, and the matter proceeded to trial. On the third day of trial, Denise requested that she be allowed to discharge her attorney of record and to substitute new counsel. The court denied the motion.

The trial proceeded, and Denise rested her case in chief on the ninth day of trial. During the testimony of Jeffrey's first witness, the court permitted a recess. The parties then indicated to the court that they had reached an oral settlement agreement resolving all issues. The parties signed a written order of default by stipulation as to grounds and all issues. After hearing evidence of the oral settlement agreement from all parties, the court verbally entered a judgment of dissolution of marriage. A written judgment order was entered on February 2, 1984, after a hearing on Denise's objections to the settlement agreement. Denise now appeals from that judgment.

Denise argues that the trial court erred in entering judgment for dissolution when she objected to the terms of the settlement agreement because: (1) she was coerced into agreeing to the oral settlement agreement, and (2) she did not understand the terms of the agreement.

■■■ Section 502 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 502) is generally intended to encourage parties to reach an amicable settlement of their rights. When a party seeks to vacate a property settlement incorporated into a judgment of dissolution, all presumptions are in favor of the validity of the settlement. (*In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 313.) Although the law looks with favor upon such settlements, the terms of an agreement will not be given effect if procured by fraud or coercion or if contrary to any rule of law, public policy or morals. 130 Ill. App. 3d 311, 313.

Evidence of coercion must be clear and convincing in order for a court to set aside the agreement on this basis. (*In re Marriage of Riedy* (1985), 130 Ill. App. 3d 311, 314.) Here, Denise bases her claim of coercion upon her belief, as testified to at the February 2 hearing, that she did not enter into the verbal agreement on her own free will but that she was "pushed into it" by the attorneys of record.

The record reveals that on December 7, 1983, the ninth day of trial, the parties entered into the oral settlement agreement. After hearing the presentation of the agreement, the court called each of the parties, including Denise, under oath to attest that the agreement was in the best interests of the child, to which each party answered affirmatively. Jeffrey's counsel then asked all the parties if they en-

tered into the agreement freely and voluntarily, to which each of them individually responded yes.

On February 2, 1984, a hearing was held on motion of Jeffrey to present and have entered the judgment of dissolution incorporating the terms of the oral settlement agreement. Denise objected, and the court permitted her to testify as to the particular portions of the agreement she found objectionable. She testified that, to her recollection, she had not agreed to give Jeffrey permanent custody of the minor child. She recalled hearing the oral recitation of the settlement agreement on December 7, but she believed she had said that she did not have a choice as to whether to enter into the agreement. She understood the agreement to mean she could "fight the custody," not merely stay the transfer of the child after the first 1½ years. She believed they were agreeing to continue the temporary custody order of the court.

On cross-examination, Denise agreed she heard Jeffrey's counsel tell the court on December 7 that the parties stipulated that, in the best interests of the minor child, her permanent care, custody, control and education were to be awarded to Jeffrey. Further, she agreed she heard counsel say that after 1½ years the physical possession would be transferred from the paternal grandparents to Jeffrey, as permanent custody. She testified that she did not object to any of the terms of the agreement as presented to the court. She stated that the written agreement (as incorporated into the judgment for dissolution) differed from the verbal agreement.

Denise further testified that she did not feel she made the verbal agreement of her own free will, but that she "was pushed into it by four attorneys and just the way everything was going." She agreed her attorney had told her that she did not have to agree to it and that she could continue with the proceedings. On cross-examination, she stated that she decided on her own to enter into the agreement. She further testified that she knew her choices were either to continue with the litigation or to negotiate, and that she decided to negotiate. Prior to entry of judgment, the trial court carefully reviewed the agreement and the consent of each party to be assured that it was voluntarily given.

Denise has failed to provide any support for her allegations that she was "pushed into [the agreement] by four attorneys" and that she did not "have a choice" as to whether to enter into the agreement. As such, the allegation of coercion is insufficient to invalidate the settlement agreement. *Cf. In re Marriage of Kloster* (1984), 127 Ill. App. 3d 583, 585-86.

■ Furthermore, considering all of the facts, Denise's claim that she did not understand the agreement is not substantiated. Moreover, she did not object to any of the terms of the agreement as presented to the court. Where the contents of an agreement are testified to and the objecting party fails to object or to give evidence to the contrary, the agreement is established. (*In re Marriage of Kloster* (1984), 127 Ill. App. 3d 583, 586.) A property settlement should not be disregarded simply because one party has second thoughts. (127 Ill. App. 3d 583, 586.) We conclude that Denise's statement affirming the settlement and her failure to object to the recitation of the agreement show she understood and agreed to the settlement. See *In re Marriage of Kloster* (1984), 127 Ill. App. 3d 583, 585; *cf. Beattie v. Beattie* (1977), 53 Ill. App. 3d 501, 507.

■ Denise also argues that the trial court erred in approving the custody terms of the settlement agreement since such terms were unconscionable. In particular, she submits that the agreement is unreasonably one-sided and favorable to Jeffrey because it: (1) relinquished custody after eight days of trial; (2) required her to pay child support "on the salary of a waitress"; and (3) granted physical possession of the minor child to adverse intervening parties.

A careful reading of Denise's testimony at the February 2 hearing shows that she raised only two objections to the settlement agreement: (1) that she was coerced into agreeing to the oral settlement agreement in open court on December 7, 1983, and (2) that she did not understand what she was agreeing to. Neither she nor her counsel objected that the terms of the agreement were unconscionable. In fact, no claim was ever made at the trial court level that the agreement should be vacated on the basis of unconscionability.

On appeal, Denise's argument as to the impropriety of the agreement is premised upon its unconscionability. It is axiomatic that issues not presented to or considered by the trial court cannot be raised for the first time on review. (*E.g., Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.) Accordingly, this court need not consider the issue of unconscionability since Denise failed to raise it in the trial court and thereby waived the issue.

■ Denise further argues that the award of physical possession of the minor child to the paternal grandparents was an abuse of the trial court's discretion. She submits that there is no statutory authority for an award of "physical possession" of a child to an intervening party. Jeffrey argues that, although the present custodial arrangement is not provided for by statute, it is permissible because all parties agreed to it in the settlement agreement.

Section 601(b)(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 601(b)(2)) permits a person other than a parent to file a petition for child custody, if the child is not in the physical custody of either parent. Moreover, grandparents have been held to have standing under section 601(b)(2). (See *In re Custody of Menconi* (1983), 117 Ill. App. 3d 394, 398-99.) Here, the paternal grandparents, who had temporary custody of the minor child, filed such a petition and they subsequently were awarded physical possession of the minor child for an 18-month period, as agreed by all the parties in the settlement agreement. It is well established that stipulated child custody settlements have long been recognized in this State, unless contrary to the best interests of the child. *E.g., In re Marriage of Ayers* (1980), 82 Ill. App. 3d 164, 172.

■ We conclude that Denise freely and voluntarily entered into the custody agreement. Upon agreement of the parties to such a custody arrangement, Denise has no basis to question the propriety of the custody award. See *Filko v. Filko* (1970), 127 Ill. App. 2d 10, 25 (parties are bound by their stipulations unless it can be shown that they were unreasonable or resulted from fraud).

■ Denise's next contention is that the trial court erred in denying her motion to voluntarily dismiss her petition for dissolution and custody made moments before the commencement of the trial. She claims an absolute right to voluntarily dismiss the action since no counterpetitions were pending, all parties were present when the motion was made, and no one objected on grounds of notice. Jeffrey argues that the grandparents' petitions to intervene, which raised a question of the best interests of the child, constituted counterclaims within the meaning of section 2—1009(a) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1983, ch. 110, par. 2—1009(a)) and that the grandparents did not consent to the dismissal as required under section 2—1009(a).

Section 2—1009(a) states:

> "Voluntary dismissal. (a) The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause. *** *After a counterclaim has been pleaded by a defendant no dismissal may be had as to the defendant except by the defendant's consent.*" (Emphasis added.)

The issue becomes whether the grandparents' petitions to intervene for custody constituted counterclaims for purposes of section 2—1009.

A counterclaim is defined in section 2—608 of the Code as follows:

"(a) Any claim by one or more defendants against one or more plaintiffs, or against one or more codefendants, whether in the nature of setoff, recoupment, cross claim or otherwise, and whether in tort or contract, for liquidated or unliquidated damages, or for other relief, may be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim.

(b) The counterclaim shall be a part of the answer, and shall be designated as a counterclaim." (Ill. Rev. Stat. 1983, ch. 110, par. 2—608.)

In further defining a counterclaim, this court has stated that a counterclaim is "a cause of action which seeks affirmative relief," distinguishing it from an answer or affirmative defense. *Benckendorf v. Burlington Northern R.R.* (1983), 112 Ill. App. 3d 658, 662; see also *Helle v. Brush* (1971), 2 Ill. App. 3d 951, 953, *rev'd on other grounds* (1973), 53 Ill. 2d 405.

By intervening in the custody matter, the grandparents have all the rights of the original parties. (See Ill. Rev. Stat. 1983, ch. 110, par. 2—408(f).) In particular, an intervenor has the right to claim the benefit of the original suit and to prosecute it to judgment. (*Gage v. Cameron* (1904), 212 Ill. 146, 171-72.) Such right cannot be defeated by the dismissal of the suit by the plaintiff after the filing and notice of the petition to intervene. (*Gage v. Cameron* (1904), 212 Ill. 146, 171-72; see also *In re Application of County Collector* (1977), 53 Ill. App. 3d 120, 123; *Seil v. Board of Supervisors* (1968), 93 Ill. App. 2d 1, 8.) Accordingly, we conclude that the grandparents were entitled to have the custody issue decided by the trial court; we view their intervening petitions for custody as counterclaims for purposes of section 2—1009 and, consequently, sufficient reason to bar Denise's voluntary dismissal of the action.

■ Denise next argues that the trial court erred in denying her oral motion to substitute attorneys on the third day of trial after she had already called eight witnesses to testify in her behalf. She stated she wished to discharge her attorney because she felt she had "not been represented well" and she believed he had "given up hope in this case." The attorney she wished to retain stated he would need a 30-day continuance. When a motion for substitution of attorneys is made during trial, the movant must show some valid reason for substitution, such as the original attorney's misconduct. (*In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 615.) To allow a litigant an unlimited right of substitution could be used as a dilatory tactic or a means to disrupt an ongoing trial. (105 Ill. App. 3d 596, 615.) Here,

since the impetus behind the discharge of the attorney appears to be predicated upon emotional whim rather than upon any apparent sound reason, we find no error in the denial of the motion for substitution. See *Ruskin v. Rodgers* (1979), 79 Ill. App. 3d 941, 955.

For the reasons expressed above, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.