Nos. 34617, 34643 Cons.—No. 34617, 
 No. 34643, 
ALICE D. JAMES, Appellant, *vs.* DAVID JAMES, Appellee.

*Opinion filed June 20, 1958—Rehearing denied September 15, 1958.*

296

BERKSON & SPITZER of Chicago, (JEROME BERKSON, and MILTON K. JOSEPH, of counsel,) for appellant.

RINELLA AND RINELLA, of Chicago, (SAMUEL A. RINELLA, and HARRY G. FINS, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

On April 3, 1957, the superior court of Cook County entered a decree granting Alice D. James, appellant, a divorce from David James, appellee, on the grounds of extreme and repeated cruelty. The decree had been preceded by a perfunctory hearing on March 25, 1957, at which time the parties orally reached a property settlement that was subsequently written, signed and incorporated into the divorce decree. By its terms appellee agreed to pay $200 a month for the support of two children, to pay appellant $25,000 in full settlement and discharge of all claims against his person and property, including alimony, and to pay her attorney's fees in the amount of $2,500. With respect to the $25,000, the agreement stated that $5,000 would be paid when the divorce decree was entered and the balance on or before 120 days, provided appellant would quitclaim to her husband her joint tenant's interest in their residence property, and vacate the premises. Pursuant to such agreement appellant was paid $5,000, and her attorney $2,500, on the day the decree was entered. Thereafter appellant tendered back the $5,000 and, within 30 days after the entry of the decree, (see: Ill. Rev. Stat. 1957, chap. 110, secs. 50(6) and 68.3,) filed a motion to vacate alleging that the property settlement had been procured through fraud and misrepresentation on the part of appellee relative to the true value of his net assets. Such motion was heard by a judge other than the one who had entered the divorce decree and was denied after an ex-

tensive hearing, as was a motion by appellant for leave to file an amended motion which, in effect, added coercion as a further grounds for vacating the decree. As a result appellant has prosecuted an appeal both from the original decree of divorce and the orders entered in the proceeding to vacate. Inasmuch as the decree appealed from required appellant to convey her interest in real estate, a freehold is involved so as to invest this court with jurisdiction of a direct appeal. *Lewis* v. *Lewis,* 316 Ill. 447.

Three days before appellant filed notice of appeal, appellee filed a petition in the cause seeking to compel the appellant to deliver a quitclaim deed to the residence property in accordance with the decree and settlement agreement. This petition was heard by still another judge and culminated in an order, entered August 29, 1957, directing appellant to deliver such a deed within 10 days. Appellant has likewise prosecuted a direct appeal from the latter order and, upon her motion, it has been consolidated with her previous appeal.

Before looking to the substantive issues in controversy we are first confronted with a claim made in appellee's brief that appellant is, as a matter of law, barred from taking an appeal from the decree of April 3, 1957, because she has accepted benefits thereunder, *viz.,* the payment of $2,500 in fees to her attorney, whose representation of her ceased when the decree was entered, and the payment of $5,000 to herself. We are of the opinion, however, that on this record this circumstance does not operate as a release of error. Within 30 days from the entry of the decree, appellant offered to do equity by returning the amount received, or giving credit for it, or doing whatever the court should deem fair and just.

In a further effort to forestall a review of the cause appellee insists that the decree of April 3, 1957, is a consent decree from which no appeal may be taken, and implies that the property settlement provisions can only be

attacked by an original bill in the nature of a bill of review. (See: *Krieger* v. *Krieger*, 221 Ill. 479; *Galway* v. *Galway*, 231 Ill. 217; *Bergman* v. *Rhodes*, 334 Ill. 137; *Sims* v. *Powell*, 390 Ill. 610.) While it is beyond the power of parties to adjust the question of divorce by consent or agreement, the power to themselves adjust future maintenance or property rights is well recognized. When this is done and the contract of the parties is embodied in the decree for divorce, that portion of the decree has been held to be a consent decree which, unless induced by fraud, thereafter precludes the rights of the parties. (*Smith* v. *Smith*, 334 Ill. 370.) In the case last cited, where such a consent decree was attacked for fraud, the court held that relief could not be procured by a petition for modification filed in the divorce proceeding, and stated that such a contract, like any other contract, must be attacked by some method recognized by courts of equity for relief from fraud. The *Smith case*, however, may be readily distinguished from the one at hand for there the petition for modification was not filed until nine months after the decree had been entered. In the instant case the appellant's motion to vacate was filed within 30 days after the court's decree was entered. Section 50(6) of the Civil Practice Act provides that "The court * * * may on motion filed within 30 days after entry thereof set aside any final order, judgment or decree upon any terms and conditions that shall be reasonable." (Ill. Rev. Stat. 1957, chap. 110, par. 50(6).) Appellant's motion, therefore, was made while the trial court still had full control of the decree and jurisdiction to vacate or modify it. (Cf. *Laita* v. *Laita*, 306 Ill. App. 276, 28 N.E.2d 299.) Moreover, bills of review and bills in the nature of review have been abolished by section 72 of the Civil Practice Act which provides that where 30 days have elapsed after judgment or decree, comparable relief may be obtained by the simple expedient of filing a petition in the same proceeding in which the order, judgment or decree under attack

was entered. (Ill. Rev. Stat. 1957, chap. 110, par. 72.) Were we to hold in this case that the consent feature of the decree precluded relief from fraud by means of a motion filed within 30 days after the entry of the decree, we would, by virtue of section 72, be telling appellant in effect that she must wait until the expiration of 30 days at which time a petition seeking the same relief, in the same cause, will be heard. Such delay and incongruity is inconsistent with the liberal aims of the Civil Practice Act. We conclude, therefore, that the trial court correctly entertained the motion to vacate the decree, and that its consent provisions, in view of appellant's timely motion, are no bar to this appeal.

The principal question for decision is whether the property settlement embodied in the divorce decree should be enforced, or whether it should be vacated because of alleged fraud, misrepresentation and coercion practiced on appellant. Pertinent facts are that the parties were married in 1940 and that appellant filed the present divorce action in October, 1956, following a period of six years during which tensions mounted and their relationship deteriorated. After the complaint was filed negotiations were started by their attorneys with a view to agreeing upon a property settlement, it appearing that appellant had no knowledge of her husband's assets or business operations. As a result depositions of the parties were taken on three occasions early in 1957. From testimony then given it appears that appellee was a man of moderate means at the time of the marriage, possessing less than $1,000 in cash and no real estate. He did, however, own a one-fourth interest in a manufacturing business in which he was active. Appellee sold his business interest in 1945 and started a metal products company, and, in conjunction therewith, later organized a holding company called the David James Corporation. In 1948 appellee created a revocable trust, naming himself, an employee, and a son by a previous marriage, as trustees, in which he

placed his investments. At the depositions appellee produced income tax returns, the trust instrument, past audits of the corporations and, before the divorce was heard, permitted appellant's attorney to examine a 1956 audit of the David James Corporation. Using the values shown for the close of 1956 it appears that the assets of the trust amounted to $172,523 less a personal debt of $31,000 owed by appellee to the James Corporation, or a total of $141,523. There is a question of whether the latter figure should also be reduced by $25,000, the amount of a "Reserve for Contingencies" which had been carried on the books of the James Corporation for a period of six years. While we agree with the trial court that the maintenance of such a reserve did not constitute an effort on the part of appellant to misrepresent the true assets of his company, we do not concur in the finding that it should not be included in determining the net worth of the company. The only definite evidence in the record relative to the fund is the testimony of an accountant employed by appellant who expressed the opinion that the reserve should be included in the net worth of the corporation, inasmuch as corporate officers could give no answer as to its purpose. According to Paton, Accountants' Handbook, 2d ed. 1943, "Where a reserve is established to cover a possible loss which has in no sense occurred, the amount of such reserve clearly remains a part of earned surplus and should be so reported."

Other assets of the appellee made known to appellant by testimony or documents were: a half interest in the home held in joint tenancy with appellant, $21,500; cash in the bank, $1,400; shares of stock in Sullivan Company, $3,600; and an outstanding loan, $3,000. These amounts, coupled with the value of the trust, extend appellee's personal and business net worth to approximately $170,773. His net income after taxes for the years 1954, 1955 and 1956 was, respectively, $12,700, $14,000 and $16,800. As opposed to this appellant was possessed only of her joint tenant's

interest in the residence property, valued at $21,250. With regard to the home, the proof shows that the parties first bought a home for $14,000 which they held as joint tenants and later sold for $28,500. Using the proceeds from this sale, their present home was purchased for $23,500 and appellee added $19,000 in improvements, paid with funds borrowed from and still owing to one of his corporations.

Although substantially all of the foregoing information was in the hands of appellant's attorney, no settlement had been reached when the divorce cause came up for hearing on March 25, 1957. Between 11:00 A.M. and 4:30 P.M. on that day further efforts were made to reach an agreement, with appellant declining offers of $15,000 and $25,000, in addition to $200 a month for child support. By her version pressure was exerted upon her from all sides to agree to a settlement. During the course of the afternoon conferences were held with the judge to whom the case was assigned. On one such occasion appellee's attorney agreed to pay appellant's attorney's fees in addition to what had already been offered. When appellant remained adamant, there was some further discussion during which, according to appellant, appellee's attorney stated that the trust fund couldn't be included in the settlement, that it couldn't be touched without the consent of the other two trustees, and that all his client possessed was the house, a bank account ranging from $1,000 to $1,400, and debts of $12,000. Whether the judge was present when such representations were made with respect to the trust is not clear from the record. Further, in such regard, appellant testified that her own attorney told her on the day of the hearing that none of the husband's property could be touched but the house. This is at odds, however, with testimony of her attorney to the effect that he knew the trust to be revocable and considered its assets to be the appellee's property.

During another conference, which was testified to by both appellant and her attorney, the only other persons present, the judge informed appellant that $200 a month was the top allowance for the support of her two boys, and that she would have no claim by reason of her joint interest in the residence unless she had worked and contributed to its purchase. In view of our statute (Ill. Rev. Stat. 1957, chap. 40, par. 19) which permits a court to order such child support "as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just," and in further view of the premise that property voluntarily conveyed by a husband to a wife is presumed to be a gift, (See: *Baker* v. *Baker,* 412 Ill. 511, 514-515, and cases there cited,) it is manifest that the court's representations to appellant did not accurately or completely express the law of the case. This circumstance becomes significant in view of testimony by appellant's attorney, given at the motion to vacate, which leaves no doubt that the attitude reflected by the court's remarks was a predominant factor in his decision to accept the offer of $25,000 for his client, even though he realized a larger figure was more in conformity with appellee's assets.

Appellant testified that she remained dissatisfied with all the offers made to her that day and would have left the court house had her attorney not prevented it by telling her she had to stay and accept the settlement because the case was assigned. Following this a further conference was held at which the disposition of household articles was agreed upon and appellant apparently acquiesced in the $25,000 offer. For the latter sum, therefore, she gave up her joint tenant's interest valued at $21,500 and waived claim to assets of her husband, the guilty party in the divorce, then totalling approximately $170,000. Thereafter, at 4:30 P.M., the divorce complaint was heard and, upon direct examination, appellant testified she understood that

she had entered into a property settlement and indicated that she was familiar with its terms. When cross-examined as to whether she had been fully advised as to her husband's assets and the condition of his business affairs, appellant first sought to qualify her answers but desisted and answered in the affirmative when the court remarked: "I understood this matter to be settled," and when appellee's attorney, after a suggestion from appellant's own attorney that the question be rephrased, directed her to answer the question "yes" or "no." Four days after the hearing the settlement agreement was reduced to writing and signed by both parties. As previously related it was then incorporated in the divorce decree of April 3, 1957. Although the agreement recited that it was "subject to the approval of a chancellor," it is manifest from the record that little or no judicial inquiry was ever made into its terms, bases or fairness.

Based upon the evidence substantially as related, the judge who heard the motion to vacate the decree was of the opinion that appellee had made a full disclosure of his assets, that such disclosure was fully received and understood by appellant and her attorney, and that the property settlement had been fairly arrived at after lengthy and studied negotiations. Accordingly, he found there had been no fraud, misrepresentation, or coercion and denied relief. In the course of an oral opinion, however, he expressly stated that, in view of the husband's assets and the interest appellant had relinquished in the home, he considered the settlement inadequate and inequitable both as to the amount of child support and the amount paid to appellant. Acting entirely upon his own volition, and without objection of the parties, he modified the agreement by increasing the amount of child support from $200 to $300 per month. He declined to do further equity, remarking that appellant's "change of heart should not be permitted to undo what had been done after deliberation and negotiation."

The law is well settled that parties to an action for divorce may adjust between themselves the amount required for the future support of a wife by a husband, and that they may, if such a course is desired, voluntarily effect a settlement of their property interests. (*Smith* v. *Smith,* 334 Ill. 370; *Walters* v. *Walters,* 409 Ill. 298.) When such agreements are made a part of the divorce decree, they become merged in such decree and are regarded as contracts between the parties which, if fairly made and in good faith, will be accepted and enforced by the courts. (*Adler* v. *Adler,* 373 Ill. 361; *Maginnis* v. *Maginnis,* 323 Ill. 113.) They will, however, be set aside and vacated for fraud or coercion practiced by either party, or if contrary to any rule of law, public policy or morals. (*Smith* v. *Smith,* 334 Ill. 370; *Swannell* v. *Wilson,* 400 Ill. 138.) As is observed in *Hamlin* v. *Hamlin,* 230 N.Y.S. 51, 56-57, contracts of such nature are, in theory, in furtherance of the duty incumbent upon a husband to support his wife. Thus the interest of the public, as well as that of the parties, is involved, and public policy requires that such contracts be not only free from taint of actual fraud and coercion, but also reasonably fair and sufficient, having regard to the station in life and the circumstances of the parties. To the same effect is *Helvering* v. *Leonard,* 310 U.S. 80, 84 L. ed. 1087, 1092, where it is said that property settlements in divorce cases "may be remade by the court not only where an ordinary contract may be set aside but also where they are unfair, inequitable and unjust." See also: *Messer* v. *Messer,* 238 Iowa, 783, 28 N.W.2d 329; *Bamesberger* v. *Bamesberger,* 238 Iowa, 492, 28 N.W.2d 28.

With these principles in mind it is our opinion that the property settlement in this case must be set aside not only for its manifest inequity and unfairness, but also because its accomplishment does not clearly appear to have been entirely free from coercion and misrepresentation. Despite

the fact the agreement was preceded by inquiry and nego-
tiations, the execution of the agreement itself was neither
studied nor deliberate. It was, rather, hastily contrived in
the hours immediately before the hearing of the cause.
During this period, and even when the cause was heard,
appellant manifested her dissatisfaction with the offer made
to her. She was, however, overcome by her own attorney's
representations that she had to settle and could not leave
the court because the matter had been set for hearing, and
by the repeated insistence of opposing counsel that her hus-
band had nothing, and that his funds in trust could not be
touched in a property settlement. It is true appellant had
knowledge that the trust was revocable, but any actual
understanding that the trust could be revoked in connection
with the settlement was overcome by the statements of her
husband's counsel. Added to the natural pressures of the
occasion and to the exhortations of counsel is the force of
the chancellor's erroneous representations that the top allow-
ance for support of a child was $100 a month, and that she
could have no equity in the $42,500 home in which she was
a joint tenant unless she had worked and contributed to the
purchase price. According to appellant, the court further
showed his displeasure at her claims by admonishing her
not to tell him her troubles when she complained of the
inadequacy of the support offer. With the court manifest-
ing such an attitude, and with her counsel giving up the
fight in view of the court's remarks, it would appear that
appellant became bereft of aid in her previously resolute
efforts to effect a more equitable settlement, and succumbed
to the pressures exerted upon her both to settle the property
on her husband's terms and to proceed with the divorce
hearing.

In face of these circumstances we cannot agree that ap-
pellant willingly and knowingly agreed to the property
settlement or that her efforts to set it aside are prompted
solely by a mere change of heart. Accordingly, so much

of the decree of April 3, 1957, as embodies and relates to the property settlement of the parties is reversed, and the cause is remanded to the superior court of Cook County with directions to conduct such further proceedings with respect to child support and a settlement of property or alimony, as equity and justice require. Consonant with this result, the order of August 29, 1957, directing appellant to deliver a quitclaim deed is also reversed.

*No. 34617—Reversed in part and remanded, with directions.*

*No. 34643—Order reversed.*