ELAINE M. BEATTIE, Plaintiff-Appellant, *v.* JOSEPH E. BEATTIE, Defendant-Appellee.

Third District   No. 76-121

Opinion filed October 11, 1977.

Anthony C. Raccuglia, of Peru, for appellant.

Watts C. Johnson and Robert F. Russell, both of Johnson, Martin & Russell, of Princeton, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Bureau County, Illinois, which denied a motion filed by Elaine M. Beattie to vacate a divorce decree and set aside the property settlement agreement which had been incorporated into the divorce decree.

On June 3, 1975, Elaine M. Beattie was granted a divorce from Joseph E. Beattie. Prior to the hearing on the merits of the divorce complaint, the parties had entered into a written property settlement agreement. This agreement was negotiated on the afternoon of June 2, 1975, and

completed on June 3, 1975. It was approved by the court and incorporated into the divorce decree entered on June 3, 1975.

On June 24, 1975, Mrs. Beattie filed a motion to vacate the decree of divorce and set aside the property settlement agreement, alleging that she lacked knowledge of the provisions of the property settlement agreement because she was suffering from a mental disability and was without benefit of private counsel to advise her regarding the provisions of the agreement at the time the agreement was negotiated and signed. She also alleged that the property settlement agreement was void because it was contrary to public policy. After a hearing on the merits of the motion to vacate, the motion was denied.

Mrs. Beattie argues that the facts and circumstances contained in the record on appeal require a vacation of the divorce decree and a setting aside of the written property settlement agreement as being contrary to public policy or morals and as being procured by fraud or coercion.

It appears from the record that the husband, Joseph Beattie, after a 24-year marriage to Elaine Beattie, decided that he wanted a divorce. He took his wife to the office of attorney Watts Johnson and explained to Johnson that he wanted the divorce. Mr. Johnson agreed to represent the husband in the divorce action and also agreed to file the complaint on behalf of the wife, Elaine Beattie, so that she would be the plaintiff in the divorce action. In order that the wife would be represented by an independent attorney, Mr. Johnson contacted attorney Donald R. Bird and asked him to appear at Johnson's office in the afternoon of June 2, 1975, to meet with Mrs. Beattie and to discuss a proposed property settlement agreement with her. Mr. Bird did so; he also appeared in court with Elaine Beattie on June 3, 1975, at which time a hearing on the merits of the divorce complaint was held.

It also appears from the record that on June 2, 1975, all matters regarding the financial arrangements of the parties were discussed. Only a general discussion had been held between the parties prior to that time. When they met in Mr. Johnson's office they were there for approximately 1½ to two hours, at the end of which time the property settlement agreement was reached.

Joseph Beattie is a self-employed farmer on rented land near LaMoille, Illinois. In connection with that farming operation, he owns machinery and other items of chattel property related to the farm, subject to debts thereon. There is also a house and lot in LaMoille, Illinois, which has an approximate value of $25,000 and is subject to a mortgage in the approximate amount of $4,500. The house is rented for a monthly income of $125 per month. It is owned solely by Elaine Beattie. Seven children, ranging in age from 20 to 11, were born to the parties as a result of this marriage.

According to the property settlement agreement, Mrs. Beattie was to retain as her sole property the real estate located in LaMoille, Illinois, which was already in her name and apparently acquired with joint marital funds. She was to pay one-half the mortgage and Mr. Beattie was to pay one-half the mortgage. Mrs. Beattie was to receive the rental income. In addition she was to receive a savings account at the State Bank of Van Orin in the approximate amount of $1,000, and a savings account in the Colonial Trust and Savings Bank in the approximate amount of $3,000.

It appears from the record that Mrs. Beattie was also to receive $62.50 per month per child for four minor children for a total of $250 per month child support. She was to live rent free in a farmstead now occupied by her as long as Mr. Beattie tends the farm or until his remarriage, or until she voluntarily moved out. Mr. Beattie was to pay the maintenance and utility expenses. Mrs. Beattie was also to receive a 1973 Ford LTD automobile.

Mr. Beattie was to retain as his sole property a joint bank account at the Van Orin Bank in the amount of $7,000, and a treasury bill in the principal amount of $10,000. In addition he was to retain all the farm chattel property of the parties, having a net value of about $60,000. The treasury bill had been cashed and credited to the joint account prior to the divorce action.

Prior to the meeting at the office of Mr. Johnson, Mrs. Beattie did not know Mr. Bird. She had not made an appointment with him, nor did she know that he was going to be there to represent her.

Attorney Donald R. Bird, practicing in Princeton, Illinois, received a telephone call on June 2, 1975, from attorney Watts Johnson. Mr. Johnson informed Mr. Bird that there was to be an uncontested divorce matter, and that Elaine Beattie, the wife, needed an independent attorney. In response to that call, Mr. Bird went to Mr. Johnson's office at approximately 1:30 in the afternoon. There he met Mrs. Beattie and received a copy of some papers and had a general discussion concerning whether or not she was sufficiently composed to be the plaintiff or the moving party. Mr. Bird examined the divorce complaint and made a general review of the property settlement agreement which had already been prepared.

At no time did Mr. Bird talk privately with Mrs. Beattie until they left Mr. Johnson's office and walked over to the courthouse for a hearing on the complaint; however, he did thoroughly explain the property settlement agreement to Mrs. Beattie at Mr. Johnson's office, and did ascertain that she understood its provisions.

Mrs. Beattie had been advised by Mr. Johnson that if she did not accept the role of the plaintiff in the divorce hearing one of the alternatives

would be that she would be served with a summons and a lawsuit would be filed against her.

On the evening of the day of the divorce, Mrs. Beattie admitted herself to the Methodist Hospital of Central Illinois, in Peoria, Illinois, complaining of her state of mental health. The files from the hospital were entered into evidence by stipulation between the parties; they indicated that the primary diagnosis was anxiety neurosis. No psychiatrist testified on behalf of Mrs. Beattie at the hearing on her motion to vacate to give an opinion as to her capacity to contract on the date of the divorce. This is so even though psychiatric evidence and examination was available soon after the event. The psychiatric reports indicate that Mrs. Beattie suffered from anxiety neurosis resulting from the fact of the divorce. The records from Methodist Hospital indicate that Mrs. Beattie talked with doctors and other personnel concerning the divorce, but never once mentioned the fact that she felt she did not get a fair settlement. Nothing in the reports indicates that on the date of the divorce or at any time that the plaintiff lacked the capacity to contract. The reports further indicate that shortly after her arrival she was allowed many leaves of absence from the hospital.

The judge found that this indicated that her mental illness, if any, was not particularly acute. The Beattie's eldest daughter testified at the hearing on the motion to vacate. She had accompanied her mother to Mr. Johnson's office on several occasions, including the day on which the divorce was granted. Her testimony was that Mrs. Beattie discussed freely and knowingly the settlement terms. She also said that Mrs. Beattie had done the farm books for years, recorded all the family living expenses as well as the farm expenses, and that she was well aware of the assets available for property settlement, and the income available for alimony and child support. The daughter did testify, however, that Mrs. Beattie had appeared nervous and was wringing her hands and crying on the day of the divorce and on other occasions.

Mrs. Beattie also alleged in her motion that her capacity to contract on the date of the divorce was impaired by her taking of certain prescribed drugs. Her doctor, Dr. Foresman, who had prescribed the drugs, testified that an overdose of the prescribed drugs would cause her to appear drowsy, diffident, or uncaring. The court at the hearing had observed Mrs. Beattie and found that she appeared nervous and upset. This is in direct oppostion to Dr. Foresman's testimony of the condition of a person who had taken an overdose of the drugs.

■■ Before a divorce may be granted in the State of Illinois, there must be a judicial determination that one of the parties is at fault. The parties may not make this determination for themselves; they may, however,

determine how they will divide their property and arrange for the support of their children and themselves. (*James v. James* (1958), 14 Ill. 2d 295, 152 N.E.2d 582.) The settlement of the property and support rights by the parties is condoned and encouraged. (*Gaddis v. Gaddis* (1974), 20 Ill. App. 3d 267, 314 N.E.2d 627.) When the parties enter into a written property settlement agreement after each has been made aware of the extent of the other's property and is fully aware of the provisions of the agreement, and the agreement has been approved by the court and has been incorporated into the decree, the agreement is considered conclusive and is as enforceable against the parties as if the court had made the determination. *Gaddis v. Gaddis* (1974), 20 Ill. App. 3d 267, 314 N.E.2d 647.

Courts are unable to set aside such a property settlement agreement unless there is clear and convincing evidence that the agreement was entered as the result of coercion, fraud or duress, or is contrary to public policy or morals. *James v. James* (1958), 14 Ill. 2d 295, 152 N.E.2d 582; *Gaddis v. Gaddis* (1974), 20 Ill. App. 3d 267, 314 N.E.2d 627.

Elaine Beattie argues that the agreement was contrary to public policy since she was not properly represented prior to and at the time of the divorce hearing. She states she was never really represented by an attorney. The record shows that Mrs. Beattie did not want an independent attorney at the time the property settlement agreement was being negotiated. According to Mr. Beattie's attorney, Watts Johnson, and the Beattie's daughter Vickie, Mrs. Beattie was alert and cooperative and knew what she was doing even though she was nervous and upset. Therefore it appears that Mrs. Beattie made a knowing decision that she did not want independent representation; it was Mr. Johnson who insisted that she be represented.

Mrs. Beattie complains that although Donald R. Bird appeared as her attorney of record, his representation was inadequate. Mr. Bird saw her privately only when they were walking from Mr. Johnson's office to the courthouse for the hearing on the divorce complaint. He did, however, review the property settlement agreement with Mrs. Beattie while they were both at the office of Mr. Johnson. He also discussed the divorce complaint with her and advised her to be the plaintiff. He realized that there was some hesitancy on her part to obtain the divorce, but when he questioned her she replied that she knew that getting the divorce was the thing to do at that time.

■■ ■ We believe that our consideration of this particular divorce must include the general marital situation of the parties. They had been having marital problems for several years and the husband had decided he wanted a divorce. There is evidence in the record that the wife had also stated several times that she wanted a divorce. The wife had been

treated for physical and mental problems and had been advised by her physician that she should seek a divorce. A legitimate marriage between these parties was no longer possible. Mrs. Beattie was given the opportunity to be the plaintiff in the divorce action; if she did not wish to be plaintiff, she would be the defendant. We do not comment upon the propriety of such an arrangement. We state only that in this particular circumstance we do not find Mr. Johnson's statement that if Elaine Beattie were not the plaintiff she would be the defendant coercive.

Mrs. Beattie was nervous and upset during the negotiations and the hearing. This is normal. She argues that her nervousness, her apprehension, and her emotional attitude were indications that she lacked the capacity to enter into a binding contract at the time that the property settlement agreement was signed. She states that her voluntary admission to the Methodist Hospital of Central Illinois for treatment of her mental state is a further indication that she was unaware of the import of the property settlement agreement and that she did not understand what she was getting and what she was giving up when she signed the agreement.

■■ The testimony of her daughter, Vickie, and of her attorney, Donald R. Bird, and of Mr. Beattie's attorney, Watts Johnson, was to the contrary. More significant, however, are the hospital records from Mrs. Beattie's hospital stay and the testimony of her physician, Dr. Foresman. They indicate that Mrs. Beattie's problems were marital and not psychiatric and that she had the ability to understand the divorce proceeding and the property settlement negotiations. If she said that she understood, she understood. In addition, we have the observations of the trial judge, the trier of fact. He had full opportunity to observe Mrs. Beattie when she appeared in court at the hearing on the divorce complaint. He found that she was upset and nervous, but that she was no more upset and nervous than normal. We believe that the trier of fact has an opportunity to observe each witness as he testifies and is able to draw conclusions regarding his credibility from those observations. This court has stated many times that we will not overrule such a finding made by the trier of fact unless that finding is clearly contrary to the evidence. (*Hayes v. Hayes* (1969), 117 Ill. App. 2d 211, 254 N.E.2d 288.) In the instant case, the evidence clearly supports the conclusion of the trier of fact.

Mrs. Beattie also argues that the property settlement agreement was contrary to public policy because it is inequitable. She quotes *Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 461-62, 350 N.E.2d 103, 107:

> "[I]n ascertaining whether a particular settlement agreement violates public policy, reviewing courts not only focus on whether such contracts are free of actual fraud and coercion, but emphasis

is also placed on whether they are reasonably fair and sufficient in light of the station in life and the circumstances of the parties."

We have determined that the property settlement agreement was free from coercion. Mrs. Beattie understood what she was doing when she signed the property settlement agreement and when she testified at the hearing on the divorce complaint.

There is also evidence in the record that Mrs. Beattie had kept the financial records for the family living expenses and for the farm expenses. She kept these records on a system provided by the Illinois Valley Farm Bureau. These records were sufficiently detailed that comparisons could be made between the Beattie farm and other farms and a cost analysis could be made of the farm operation. The farm management consultant worked with Mrs. Beattie and found her to be cooperative. She had an above average understanding of the bookkeeping system. Since she knew the extent of the family assets and understood what she was doing when she signed the property settlement agreement, we need not consider whether she was defrauded of her share of the family and farm assets.

We have carefully reviewed the record in this matter to determine if the property settlement agreement was fair. It appears that some testimony regarding the assets of the parties was misleading and confusing. As we understand the property settlement agreement, Elaine Beattie was to receive a house and lot in LaMoille, Illinois, with a value of $25,000, subject to a $4,500 lien; the rental income from the house in the amount of $125 per month; rent-free possession of the house on the farm which Mr. Beattie rented; the household furnishings; a 1973 Ford LTD automobile, free and clear of any liens; child support in the amount of $250 per month; and bank accounts in the amount of $4,000. The parties had calculated the value of the rent-free home at $2,750 because Mr. Beattie would maintain the home and pay all the utilities except the telephone. He was also to pay the children's education expenses and extraordinary medical expenses, the attorney's fees in the divorce action, and one-half the mortgage on the house in LaMoille.

Mr. Beattie was to receive farm chattel property in the amount of $60,000, the bank account in the amount of $7,000, and a treasury note in the amount of $10,000. The treasury note had been cashed in January, 1975, prior to the divorce, and the proceeds were placed in the the joint checking account.

Mrs. Beattie earned approximately $5,500 to $6,000 per year. It appears that she has a responsible job at K-Mart and that she is under no disability which prevents her continued employment. Mr. Beattie's income was disputed, but it appears that his taxable income averaged somewhat more than $10,000 each year.

■■ We do not find this settlement to be inequitable. We do

understand that it appears that Mr. Beattie has received a great deal more because the farm chattel property is worth $60,000. However, this property is used in the production of income which he shares with Mrs. Beattie in cash and in kind.

■■ Mrs. Beattie argues that the child support payments provided for in the property settlement agreement are less than those recommended by the Bureau County Bar Association. We do not view any such bar association recommendation as binding on either trial or appellate courts, nor do we think it error if an attorney fails to inform his client such recommendations exist. We believe that it is necessary to examine the entire property settlement agreement between the parties. If they, as here, decide to provide other forms of support than cash payments we will not interfere as long as we feel that sufficient provision for the support of the children has been made.

For the reasons stated above the judgment of the circuit court of Bureau County is affirmed.

Judgment affirmed.

STENGEL, P. J., and ALLOY, J., concur.