ELAINE L. HORWICH, Plaintiff-Appellant, *v.* EDWARD I. HORWICH, Defendant-Appellee.

First District (3rd Division)    No. 77-55

Opinion filed February 7, 1979.—Rehearing denied March 9, 1979.

Sidney J. Sexner, Ltd., and Stephen M. Komie, both of Chicago, for appellant.

Charles I. Calisoff, of Chicago (Ralph E. Jacobson, of counsel), for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

On June 20, 1973, after 11 years of marriage, Elaine Horwich (plaintiff) and Edward Horwich (defendant) were divorced in the State

of Nevada, then defendant's State of domicile. Though this result was subsequently recognized as binding by both parties and the circuit court of Cook County, the latter court determined that it would have jurisdiction to provide for alimony, support and child custody. Almost 3 years after the Nevada divorce was entered, the circuit court judge, after a hearing, awarded custody of the couple's only child to defendant. The judge also said he would approve a judgment incorporating the terms and provisions of a property settlement which had been negotiated and agreed to by the parties in open court and set forth in the report of proceedings. The property settlement provided for alimony and property division. More than 3 months later, but prior to entry of a final judgment, the plaintiff filed a petition seeking to stay the proceedings; to vacate the property settlement to which she had previously agreed orally in open court; and, to return the cause for trial. The circuit court denied this petition, and plaintiff appeals. The sole issue presented for review is whether the plaintiff has demonstrated adequate grounds for relieving her of the property settlement agreement she previously approved.

Plaintiff argues that the property settlement is against public policy and the result of fraudulent testimony by the defendant. The settlement provided that with the exception of four paintings and personal property which plaintiff had in her possession as of May 11, 1976, the date the plaintiff approved the property settlement, defendant would retain possession of all remaining properties; this included 61 other works of art. The settlement also required the defendant to pay over $16,000 in alimony payments through January 1978. Thereafter, defendant was obligated to make monthly alimony payments of $600.

Plaintiff argues that these terms, which were the result of day-long negotiations on May 11, 1976, are unfair and inequitable. Plaintiff attributes her acquiescence before the trial judge on that date to a variety of reasons, including: that she was unaware of the settlement's purpose, scope and finality; that she was not prepared to make such an agreement because she had no opportunity to consult financial advisors; and, that "being under an extreme emotional burden," as she described her mental state that day, she was unable to make a proper decision. Despite the plaintiff's explanation for her conduct, we believe that neither the settlement terms nor the circumstances under which the negotiations took place are so questionable or onerous that they should be regarded as against public policy and unenforceable.

■■ The law favors amicable settlement of property rights in cases involving marital dissolutions. (*Guyton v. Guyton* (1959), 17 Ill. 2d 439, 161 N.E.2d 832; *Walters v. Walters* (1951), 409 Ill. 298, 99 N.E.2d 342; *Garmisa v. Garmisa* (1972), 4 Ill. App. 3d 411, 280 N.E.2d 444.) The supreme court in *Guyton*, at pages 444-45, said, "It has long been settled

that parties to a divorce suit may voluntarily adjust their property interests and the amount, if any, to be paid as alimony; and that when such agreements are made a part of the decree the parties are concluded thereby. [Citations.]" Absent fraud, coercion or terms contrary to public morals or law, courts are hesitant to disturb an agreed settlement order. *James v. James* (1958), 14 Ill. 2d 295, 305, 152 N.E.2d 582.

To support her argument that the settlement violates public policy, plaintiff relies upon *Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 350 N.E.2d 531. In that case, a property settlement that earlier had been agreed to by both parties was vacated after the court determined that its provisions were manifestly inequitable and unfair, and, therefore, against public policy. That decision is not controlling here for the propriety of a property settlement must be determined in the light of the positions and needs of the individuals concerned, and not upon the circumstances presented and conclusions reached in another case. (See *James*.) An analysis of the relationship between the parties here and the negotiations leading to the settlement agreement reveal, at most, slight similarity to *Crawford*.

In *Crawford*, the appellant had no income except for her alimony to support herself and her children. Moreover, alimony there was limited to a 10-year period. This contrasts with plaintiff who does not have custody of children, whose alimony is not limited to a period of years, and who, most importantly, has additional income and investment capital from her partial ownership of a commercially leased building in Lincolnwood, Illinois.

The course of the negotiations also differs markedly from those involved in *Crawford* where the wife was neither advised nor consulted during the negotiations. The wife in *Crawford* expressed her dissatisfaction with the settlement terms before leaving the courtroom. Here, the plaintiff did participate in the negotiations and the record does not show when she first expressed dissatisfaction with the settlement provisions except that it was not until some time after her departure from the courtroom.

■■ ■ The record fails to support plaintiff's assertion that she did not understand the meaning of or agree to the settlement terms. On the contrary, it reveals that plaintiff twice acknowledged in open court that she fully understood the import and meaning of the settlement. The plaintiff's acceptance of the terms is also confirmed by the trial judge, who at the hearing on the petition to vacate the settlement, commented:

> "The Court wants to make this observation and recalls this day very well, and contrary to the Petition and about negotiations in the halls, it is this Court's observation that all these negotiations were conducted in the conference room. Plaintiff had counsel that

day, and I think most of this Agreement was done on a piecemeal basis and Plaintiff was on and off the stand all day and getting this Agreement in. *The Court at that time observed no emotional stress on the Plaintiff at all,* and upon questioning she fully understood the Agreement and agreed to it * * *."

This observation together with the plaintiff's in-court statements on the day of the settlement, indicate that the plaintiff's agreement to the settlement terms was the act of an informed and understanding person. That plaintiff has since changed her mind should not render the settlement invalid. In *Beattie v. Beattie* (1977), 53 Ill. App. 3d 501, 368 N.E.2d 178, and *Filko v. Filko* (1970), 127 Ill. App. 2d 10, 262 N.E.2d 88, this court affirmed the validity of agreed property settlements, despite later protests that the terms were unfair and against public policy. As in the present case, the plaintiffs in *Beattie* and *Filko* both argued that their prior agreement to a settlement was the result of a lack of understanding and a troubled emotional state. In rejecting this argument, both courts relied on the trial judge's observations that each plaintiff understood the meaning of the settlement and was in no way coerced. There is no reason for a different conclusion in this case.

The plaintiff also argues that she was led to accept the settlement by the defendant's fraudulent misstatement of his net worth and projected income. The plaintiff contends that a tax return, which the defendant presented to the court as proof of his gross income, failed to indicate his 80-percent ownership of a business, and therefore, was tantamount to fraud.

■ To establish common law fraud, there must be clear and convincing evidence of a "misrepresentation * * * of a statement of material fact, false and known to be false by the party making it, made to induce the other party to act in reliance on the truth of the statement, and acted upon by the party to whom the misrepresentation was directed." *Wilke v. Wilke* (1977), 51 Ill. App. 3d 438, 441, 366 N.E.2d 973; see also *Metro-Goldwyn-Mayer, Inc. v. Antioch Theater Co.* (1977), 52 Ill. App. 3d 122, 133, 367 N.E.2d 247.

The tax return on which the charge of fraudulent misrepresentation is premised by the plaintiff in this case, was introduced only for the purpose of showing the defendant's gross income. The tax return did not constitute a misstatement by the plaintiff for it did not purport to reflect his other nontaxable property interests. More important is the apparent absence of reliance by the plaintiff on the information set forth in the return in reaching her decision to agree to the settlement. The parties had been in litigation for 6 years, during which time, the plaintiff had the opportunity to ascertain the extent of the defendant's wealth and property. In a deposition taken in March 1974, the plaintiff learned of the

defendant's business ownership which she now claims was withheld from her. There is no proof that the plaintiff relied on the tax return rather than on the knowledge she previously acquired or that the tax return was false; consequently, the plaintiff has not established fraud—even by a preponderance of the evidence, let alone by clear and convincing proof.

■ A property settlement that is agreed to in court by both parties and approved by the trial judge cannot later be disregarded because of a change of mind or second thoughts on the part of one of the parties. The parties here declared in open court that the settlement terms were fair and that they agreed to them. If the plaintiff now feels she exercised faulty judgment in accepting the settlement terms, neither the defendant nor the court is obligated to give her a second negotiating opportunity. The supreme court's observation in *Smith v. Smith* (1929), 334 Ill. 370, 379, 166 N.E. 85, is relevant:

> "The parties did not rely upon the equity powers of the court for the adjustment of their marital rights so far as property was concerned. They did what they had a legal right to do—adjusted those rights by mutual agreement. Like any other agreement upon full consideration, the parties are concluded by it in the absence of fraud * * *."

Accordingly, we affirm the trial court's order denying the plaintiff's petition to stay proceedings and to vacate the oral property settlement.

Judgment affirmed.

JIGANTI and McGILLICUDDY, JJ., concur.