*In re* MARRIAGE OF LORRAINE J. DE FRATES, Petitioner-Appellee, and WALTER DE FRATES, Respondent-Appellant.

First District (1st Division)    Nos. 79-1829, 80-0929 cons.

Opinion filed December 8, 1980.—Rehearing denied January 12, 1981.

Steven R. Lake & Associates, and Beermann, Swerdlove, Woloshin & Barezky, both of Chicago (Miles N. Beermann, of counsel), for appellant.

Facchini & Minton, of Arlington Heights (Joel S. Ostrow, of counsel), for appellee. .

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner, Lorraine J. De Frates, brought an action for dissolution of marriage against respondent, Walter De Frates, in the circuit court of Cook County. This controversy arises from the incorporation of an oral settlement agreement into the final judgment. The trial court conducted a "prove-up" of both the grounds for dissolution and the oral agreement. Respondent orally objected to the entry of the judgment and asked to have the prove-up hearing vacated. He later filed a written post-trial motion to vacate the judgment. Respondent contended that the agreement was not valid. In both instances, the trial court denied his motion. Respondent appealed (case No. 79-1829) and subsequently, pursuant to motion, was ordered to pay petitioner temporary appellate attorney's fees of $2,000. Respondent also appealed from this order (case No. 80-0929) and we have consolidated the appeals.

Respondent asserts that the parties had not agreed to all the terms of the oral settlement agreement prior to the prove-up. He submits that the trial court decided some important issues and essentially completed an agreement for the parties.

The parties were married on November 14, 1969, divorced on April 10, 1974, and remarried on May 29, 1976. One child, John Jeffery De Frates, was born on November 30, 1970. On May 25, 1978, Lorraine J. De Frates filed a petition for dissolution of marriage. On May 22, 1979, the parties and their attorneys appeared in the circuit court and represented that they had reached an oral property settlement agreement.

The record reveals that the following material terms of the oral agreement were reached without discord or discussion in open court by the parties: (1) Petitioner was to have custody of the parties' eight-year-old son. (2) Based on respondent's net take-home pay of $187 per week and petitioner's gross earnings of $125 per week, respondent would pay $40 per week child support. (3) Both parties waived maintenance. (4) All nonmarital property would go to the appropriate spouse. The parties owned the marital home in joint tenancy. Respondent agreed to transfer his interest to petitioner for $5,000. (5) Debts were clarified and assigned with the assistance of the court. (6) Respondent was to contribute $750 towards petitioner's trial attorney's fees.

The prove-up of the other items in the settlement agreement entailed some colloquy between the parties, their attorneys and the court. Agreement on details was reached with the court's assistance and guidance.

Lorraine J. De Frates testified that her husband was to have rights of reasonable visitation. Respondent was to see his son one day during the

week: from 5 p.m. until 8 p.m. during the school year, and from 5 p.m. until 9 p.m. when school was not in session. There was a colloquy between the parties, their attorneys and the court as to the details of this arrangement. With the court's assistance, the parties agreed that visitation would be on Tuesday or, upon 24-hour notice to petitioner, on Thursday. Respondent would pick up the child at home and not at school.

Petitioner further testified that the parties agreed that respondent would have visitation rights on alternate weekends. The parties expressed confusion over whether Friday night or Saturday would be the start of the weekend and, with the court's assistance, the parties agreed that during June through September respondent's weekend visitation would be from 5 p.m. Friday through Sunday at 9 p.m. His visitation during the remaining months would be from Saturday at 11 a.m. until Sunday at 8 p.m.

During petitioner's testimony, there was also a discussion about group counseling. Petitioner initially testified that both parties would continue group counseling. However, she then remarked, "I am not going to counseling with Mr. De Frates," and asked, "What am I going to counseling for?" At this point, the court interjected:

> "THE COURT: Whenever we go through a change in our life, it is sort of important, and you are really going for the benefit of your child. Nobody is pointing any finger, but there is no one in this room that could not profit by counseling, starting with me."

This explanation apparently convinced the parties that counseling would be appropriate. Thereafter, neither party objected to group counseling sessions.

Further discussion concerned a life insurance policy for the parties' son. Respondent owned the policy and petitioner wanted to own the policy and pay the premiums. Respondent interjected, "Well, I want to keep it for Jay, and I will pay the premium." In offering to pay the premium, respondent was apparently concerned only with assuring coverage for the son, Jay. This objective was attained when petitioner agreed to provide respondent proof of premium payments and respondent made no further objections.

The next item covered at the hearing was a bank account in the names of the parties, allegedly as trustees. This item was submitted to the court's discretion by agreement of the parties. The final discussion concerned the parties' insurance claim on a restaurant they had owned in Indiana which had been destroyed by fire. The trial court decided that they should split evenly any proceeds from the claim. Neither party disagreed with this resolution.

Petitioner testified that she fully understood the agreement as propounded to the court by her attorney. She stated that she was not forced or coerced into entering the agreement. At the end of the hearing, upon

questioning by the court, respondent stated that he had agreed to the settlement and that it had been fully explained to him.

At the end of petitioner's direct examination, her attorney asked that the terms of the oral settlement agreement be incorporated in a final judgment to be presented to the court and approved by both attorneys. Respondent's counsel failed to join in this request and the trial court did not rule on it.

On June 22, 1979, the court entered an order that "[t]he judgment for dissolution shall be reviewed by the Court, and if prepared in accordance with the transcript, shall be entered on June 23, 1979 * * *." On June 28, respondent orally objected to the entry of the judgment and requested that the hearing be vacated and set for trial. Respondent asserted that the settlement agreement was inequitable and that he was confused during the hearing. The court denied the motion and entered the judgment of dissolution of marriage.

On July 18, 1979, respondent filed a petition to vacate the judgment. He asserted, among other things, that the parties had not agreed to all the terms of the agreement prior to the prove-up and that the court decided several terms for the parties. He further contended that he was misled and believed that the prove-up was subject to the signing of a written agreement. On August 7, 1979, the trial court denied the petition. Respondent appeals from the judgment of dissolution, the order approving the judgment and the order denying his petition to vacate the judgment.

On September 7, 1979, petitioner filed a motion for attorney's fees. Petitioner sought an order compelling respondent to pay her attorney's fees and costs incurred in defense of this appeal. This motion was subsequently amended and heard on March 6, 1980.

Petitioner testified that she is employed as a waitress at the Oak Park Hyatt House and earns about $650 per month after taxes. She owns a 1972 Oldsmobile. She receives $40 a week in child support from respondent. She has no savings account and a checking balance of about $100. Her 1979 W-2 form indicated annual compensation of $8453.11. She owes: her father $6400; VISA $1000; Sears $600; and Town & Country $3000. She detailed her monthly expenses, which total about $1300. She meets her monthly expenses by receiving money from her father.

Respondent testified as an adverse witness under section 60 of the Civil Practice Act. He stated that he lives in an apartment in Stickney with Tracy, his 17-year-old son from a former marriage. He pays $400 per month rent. Tracy contributes about $20 a week for living expenses and buys food and "things" for himself. Respondent did not know how much money he spends for food. He owns a 1978 Mercury, with monthly payments of $189.66. He spends $50 per week on gasoline and $900 a year

on car insurance. Respondent pays $25 a month on a charge account and $50 a month on a loan.

Respondent further testified that he was unemployed but is not on public aid. He was last employed at the Carlton House on January 31, 1980, earning $6 per hour for a 40-hour week, with occasional overtime. He has no source of income since losing his job, but meets his monthly expenses by borrowing from friends. He has borrowed $2500-$2800 from John Corash; about $1000 from John Solomon; and about $2000 from Ernie, a friend of a friend, Bill McGinnis. He also owes about $3000 on a loan on his insurance policy. He owes his former attorney about $1000 and also owes money to his present attorney.

Petitioner's attorney, Michael Minton, testified to his qualifications as an attorney specializing in family law and concerning his appellate experience. He believed that it would take about 75 hours to defend this appeal.

James T. Ferrini, a past president of the Appellate Lawyers Association, testified for respondent as an expert witness. Ferrini believed it would take about 30 to 40 hours to defend the appeal. He believed that a reasonable customary charge for appellate work in this court by an attorney with Minton's experience would be $45 to $55 per hour.

On March 20, 1980, the trial court found that petitioner "does not have the ability to defend herself on appeal, * * *." The court granted her counsel a temporary allowance of $2000. Respondent's counsel asked the court to make a finding concerning respondent's financial ability. The following discussion ensued:

"THE COURT: Neither of the people have the ability to be in the Appellate Court financially, counsel; but with the care of the children she cannot afford to pay an attorney at this time.

RESPONDENT'S ATTORNEY: But what I am asking is, you have made a finding that she does not have the financial ability to pay the fees. Is there going to be a finding that he does have the financial ability to pay?

THE COURT: Counsel, I am so confused about his finances I don't know anything. There was a while he was living in the car back in the record. There was a time when he had a pretty good air conditioning business. I don't know at this time whether he has the ability to pay or not, but at the time she doesn't and he will have to."

On March 21, 1980, the court entered an order which reads in relevant part:

"THE COURT HEREBY FINDS that the Petitioner, LORRAINE J. DE FRATES, does not have the financial ability to pay her own attorney's fees for the defense of Respondent's

appeal. The Court makes no finding with respect to Respondent's financial ability to pay the attorney's fees of Petitioner's attorneys for the defense of Respondent's appeal.

NOW, THEREFORE, It is Hereby Ordered that Respondent, WALTER DE FRATES, pay the sum of TWO-THOUSAND and NO/100 ($2,000.00) DOLLARS to Petitioner's attorneys, FACCHINI & MINTON, as and for temporary fees for Petitioner's defense of Respondent's appeal, and the Court further finds that petitioner is not precluded from seeking additional fees for her defense of Respondent's appeal."

■■ Respondent contends that the trial court erred by failing to set aside the property settlement agreement. The law favors amicable settlement of property rights in cases involving marital dissolutions. (*Guyton v. Guyton* (1959), 17 Ill. 2d 439, 161 N.E.2d 832; *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.) When the provisions of a written or oral agreement are incorporated into the judgment, the agreement is merged in the judgment and is conclusive upon the parties in the same manner as if the court had made the determination. (*Stutler v. Stutler* (1978), 61 Ill. App. 3d 201, 377 N.E.2d 862.) Courts will not set aside such a property agreement unless there is clear and convincing evidence that the agreement was entered because of coercion, fraud or duress, it is unfair or inequitable, or is against public policy or morals. (*James v. James* (1958), 14 Ill. 2d 295, 152 N.E.2d 582; *Beattie v. Beattie* (1977), 53 Ill. App. 3d 501, 368 N.E.2d 178.) The decision to set aside a property settlement "must be determined in the light of the positions and needs of the individuals concerned * * *." *Horwich v. Horwich* (1979), 68 Ill. App. 3d 518, 521, 386 N.E.2d 620.

Respondent does not specifically argue that he entered into the agreement because of coercion, fraud or duress; nor does he maintain that it is inequitable, unfair or against public policy or morals. Indeed, our review of the record convinces us that the agreement suffers none of these infirmities. Rather, respondent asserts that the parties did not, in fact, agree on a number of material terms and that when there was disagreement, the court decided the issues as if it was a contested hearing. We do not agree.

The prove-up of this agreement was the culmination of lengthy negotiations, including three pretrial conferences. Both parties were represented by counsel throughout the proceedings. At the end of the hearing, respondent testified that he agreed to the settlement, that it was truly an agreed order and that it had been fully explained to him. At the hearing where respondent objected to the entry of the judgment, the trial judge noted that she saw respondent on a number of occasions that that he "always seemed to be rational and knew what he was doing." Additionally, respondent was present during the prove-up, testified and took an

active part in colloquy between the parties, their attorneys and the court. Finally, he did not protest the settlement until a month after the hearing.

Although there were disputes, discussion and colloquy over minor details and elements of the agreement, the record evidences agreement on all major terms. Matters of custody, child support, maintenance, property division, debt allocation and trial attorney's fees were settled without discord.

The essential terms of visitation were also established without disagreement: respondent was to have visitation rights one day during the week and alternate weekends and holidays. The length of visitation was never at issue during the prove-up. Discussion between the parties, their counsel and the court served to establish the days of the week respondent would have visitation rights and the precise hours of weekend visitations. The record reflects that both parties agreed to the resolution of these corollary matters.

Other matters, including group counseling, life insurance policy for the parties' son and the allocation of certain debts and properties, also involved some confusion and discussion between the parties, their counsel and the court. However, with the court's guidance, these matters were resolved in an amicable fashion. Both parties agreed to the final settlement of these terms. Finally, although there was extensive discussion about a joint bank account allegedly held by the parties as trustees, the record expressly reflects their agreement that this issue be submitted to the court's discretion.

We commend the trial court for its conciliatory actions and approve the equitable agreement it helped achieve. Courts favor the compromise and settlement of disputed claims. (*Guyton v. Guyton.*) During the prove-up, the parties voiced minor disagreement over items ancillary to the material terms of the agreement. The trial court aided them in ironing out these discrepancies. Respondent suggests that the hearing was a hybrid between the prove-up of a settlement agreement and a contested trial, with the court actually deciding disputes. We believe that to a limited extent the hearing was a hybrid between a settlement agreement prove-up and a pretrial conference and that both parties fully ratified any contribution the court made to the final agreement. In our view, respondent agreed to the settlement achieved at the hearing and his "second thoughts" about the agreement should not render it invalid. *Horwich v. Horwich* (1979), 68 Ill. App. 3d 518, 386 N.E.2d 620.

Respondent misplaces reliance on cases which are factually inapposite. In *James v. James* (1958), 14 Ill. 2d 295, 152 N.E.2d 582, the property settlement was set aside on appeal because of its manifest inequity and unfairness and because there was evidence of coercion and misrepresentation. Moreover, the agreement had been hastily contrived

only hours before the hearing. *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488, and *Crawford v. Crawford* (1976), 39 Ill. App. 3d 457, 350 N.E.2d 103, also involved considerations of haste and inequity, or both. None of these elements is present here, as respondent has neither argued nor proved any of them which are necessary to set aside the agreement.

■■ Finally, in *Stutler v. Stutler* (1978), 61 Ill. App. 3d 201, 377 N.E.2d 862, the court affirmed the denial of a petition to‾vacate a settlement agreement, with the exception of the provision on attorney's fees. Defendant-wife had objected to paying her own fees at the hearing and persisted in that objection. The instant case is distinguishable, because any objections, confusion or misgivings the parties voiced concerning settlement terms were amicably dealt with and resolved by the parties, their counsel and the court. Accordingly, we find that the trial court properly denied respondent's motions to vacate the settlement agreement and affirm the judgment of the circuit court of Cook County in case No. 79-1829.

Respondent also appeals the trial court's order that he pay $2000 to petitioner's attorneys as temporary fees for the defense of the appeal. The authority to award fees to defend an appeal is found in section 508(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 508(a)(3)), which states:

> "(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following:
>
> * * *
>
> (3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders."

■■ The party seeking an award of attorney's fees in a dissolution of marriage action must show his or her financial inability to pay and the ability of the other party to do so. (*Greiman v. Friedman* (1980), 90 Ill. App. 3d 941, 414 N.E.2d 77; *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.) Both parties concede and the record reflects that petitioner was financially unable to pay her attorney's fees. However, we find that petitioner failed to demonstrate that respondent had the financial ability to pay attorney's fees and costs.

On March 6, 1980, respondent testified that he had last worked on January 31, 1980. He had no income since that date and was meeting his

expenses by borrowing from friends. Indeed, respondent's debts amounted to about $9,000. Respondent's testimony was uncontradicted. Moreover, the trial court did not find his testimony to be noncredible, but stated in its order:

> "The Court makes no finding with respect to Respondent's financial ability to pay the attorney's fees of Petitioner's attorneys for the defense of Respondent's appeal."

Finally, when respondent's counsel asked the court for a specific finding as to respondent's financial ability, the court replied that neither party had the financial ability to be in the appellate court.

Accordingly, in case No. 80-0929 the order of the circuit court of Cook County directing respondent to pay petitioner's appellate attorneys $2000 temporary fees is reversed and the cause remanded for further proceedings.

No. 79-1829—Affirmed.

No. 80-0929—Reversed and remanded.

McGLOON and CAMPBELL, JJ., concur.