*In re* CUSTODY OF DAWN LaMARCA *et al.*,—(FRANK S. LaMARCA, Petitioner and Counterrespondent-Appellant, *v.* EILEEN S. LaMARCA, Respondent and Counterpetitioner-Appellee.)

First District (1st Division)    No. 79-8

Opinion filed October 15, 1979.

Joel S. Ostrow, of Chicago, for appellant.

Schiller & Schiller, Ltd., of Chicago (Donald C. Schiller and John F. Martoccio, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner Frank S. LaMarca filed a petition for modification of the judgment for divorce, seeking a change in custody of his two minor daughters, Dawn and Debra, ages 15 and 10 at the time of trial, from respondent Eileen M. LaMarca. Thereafter, Dawn began living with petitioner by agreement of the parties and pursuant to a temporary order. The permanent custody of Dawn was not tried and is not an issue in this appeal. After a hearing, the court found that there had been no showing that Debra's home environment posed a serious danger to her physical, mental or emotional health, as required by section 610(b)(3) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 610(b)(3)), and it denied the petition with respect to Debra. The sole issue presented for review is whether the court's denial of the petition for a change of custody was contrary to the manifest weight of the evidence.

The parties to this action were divorced on May 5, 1972, and, pursuant to a settlement agreement, custody of their two daughters, Dawn and Debra, was awarded to respondent. On August 22, 1978, petitioner filed his petition to have custody and permanent care of both minor children, because there had been a substantial change in circumstances since the entry of the divorce decree. He alleged respondent had remarried and that the relationship between respondent's husband and the children had led to physical harassment and caused emotional detriment to the children; additionally, both children had expressed a desire to be in his custody. In her answer respondent denied that the marriage had resulted in physical harassment or in emotional detriment to the children and also alleged that petitioner did not have the means to provide either for the emotional or physical needs of the children.

At a hearing on August 14, 1978, Betty Hauer, an employee of the

Cook County Department of Supportive Services, testified she investigated the parties in this case. During the investigation respondent said her present husband had been an alcoholic, and at the beginning of their marriage he had difficulty adjusting to the children and to family life. As a result there had been quarreling about his drinking. But they had all gotten involved in a counselling program, and there had been a marked improvement. Nevertheless, her husband did occasionally have backslides, and there would be arguments when they occurred. Respondent said her daughters were close and missed each other.

Debra told Betty Hauer that she missed her sister and did not get along well with her mother's husband. Although the situation had improved, he still drank at times, and on those occasions her mother fought with him. Nevertheless, she did enjoy weekends she spent with them at recreational facilities outside the city. Ms. Hauer said that Debra was neat and clean in appearance and seemed to be well fed. Debra related easily with others, and her school report indicated she was enrolled in a program for gifted children.

Betty Hauer visited petitioner's apartment and characterized it as small but neat and clean. He told her that if he got custody of both children, he would get a larger apartment and the girls would each have a room or a large room to share.

Betty Hauer believed that petitioner should have custody of Debra as well as Dawn; she based that recommendation on the close relationship between the two girls and on the statements of respondent that her husband was still drinking. Betty Hauer also believed there was very little supervision for Debra in respondent's home because both respondent and her husband worked. She also believed the separation of the girls could pose a serious emotional difficulty if they missed each other significantly. Furthermore, if they lived together, Dawn could supervise Debra when she came home from school.

Petitioner testified that in the event the court gave him custody of Debra, he would move to larger quarters and would also enroll Debra in a school for gifted children or move into the district that has the Disney Magnet School. He explained that Dawn had been living with him for 2 years, and the arrangement had worked out well: her grades were very good, and she did not have any discipline problems. When Debra visited on weekends, the sisters got along very well.

Respondent testified that Debra's physical and emotional health was very good, and she liked to read and collect things. She was at the top of her class in school, and arrangements had been made for her to go to the Disney Magnet School. She also belonged to the Girl Scouts and engaged in available extracurricular activities.

Respondent explained that the difficulties that had been present

when she first married her present husband had been resolved after seeing a psychologist for 3 years. There had been only one serious incident about her husband's drinking in the last 2 years, and that had taken place approximately one year prior to trial. She characterized her husband's behavior in the home as very good; every weekend they went to the movies or ballgames, and in the summer they enjoyed swimming and other activities at their property outside the city.

Respondent characterized her own relationship with Debra as very good. She also said Debra got along very well with her husband since the counselling. She wanted to continue having custody of Debra; she felt it was important as Debra approached puberty, but she conceded her former husband had female relatives who could possibly aid Debra at that time.

Respondent did not believe it was appropriate for petitioner to have custody of both children. She believed that petitioner did not discipline the children, and she believed that Dawn and Debra argued a great deal among themselves. After the sisters had been on vacation with petitioner for 3 weeks, they were "at each others throats," and both told her at different times they wished the other had not been there.

Raymond J. Kula, respondent's husband, testified that prior to his marriage he had been a bartender for 16 years and drank a lot. When he got married, his family did not like it, and he sought professional help. He said the counselling made the family feel better and he drank substantially less. He characterized his relationship with Debra as very good, but Debra and Dawn frequently argued when they were together.

Petitioner contends the denial of his petition for a change of custody was contrary to the manifest weight of the evidence. It is well settled that the trial court's determination on the question of the change of custody will not be set aside unless there is an abuse of discretion, or the determination is shown to be against the manifest weight of the evidence. *Caulkins v. Caulkins* (1979), 68 Ill. App. 3d 284, 288, 385 N.E.2d 1117; *Rippon v. Rippon* (1978), 64 Ill. App. 3d 465, 467, 381 N.E.2d 70.

Section 610(b)(3) of the Marriage and Dissolution Act (Ill. Rev. Stat. 1977, ch. 40, par. 610(b)(3)) states the criteria for the modification of a custody judgment as follows:

"(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:

(3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him."

Petitioner contends that the criteria for a change of circumstance were met because Debra expressed her wish to reside with him, Dawn currently lived with him, respondent had married a man who had a drinking problem in the past who did not communicate well with Debra, and Debra lived in a home with two adults who had undergone extensive psychological treatment. Petitioner contends that subsection 610(b)(3) is ambiguous because there is no definition of serious endangerment. He nevertheless finds evidence of endangerment in the testimony of Betty Hauer. She believed that an adverse emotional impact could result if Debra remained separated from her sister, and she also believed that Debra was unsupervised after school. Petitioner concludes that the criteria of section 602 of the Act, which sets forth the criteria for an original determination of custody should be followed. That section provides:

"(a) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian:

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community; and

(5) the mental and physical health of all individuals involved.

(b) The court shall not consider conduct of a present or proposed custodian that does not affect his relationship to the child." Ill. Rev. Stat. 1977, ch. 40, par. 602.

Petitioner also relies on a series of cases which hold that when the original custody provision resulted from an agreement of the parties and the trial court had not heard evidence as to what was in the best interest of the child, it should be allowed to hear all of the evidence *de novo* when one party subsequently petitions for modification. (*DeFranco v. DeFranco* (1979), 67 Ill. App. 3d 760, 765, 384 N.E.2d 997; *Boggs v. Boggs* (1978), 65 Ill. App. 3d 965, 967-68, 383 N.E.2d 9; *Schultz v. Schultz* (1976), 38 Ill. App. 3d 678, 347 N.E.2d 749; *McDonald v. McDonald* (1973), 13 Ill. App. 3d 87, 299 N.E.2d 787.) Petitioner contends, in addition, that the new Act does not apply where the original divorce decree was entered

prior to its effective date, citing *Dockum v. Dockum* (1974), 34 Colo. App. 98, 522 P.2d 744. He therefore contends that the standards of section 602 should prevail in this case, rather than those of section 610, because custody was initially agreed to in the divorce decree prior to the effective date of the new statute in 1977.

■■ We find that the legislative history of the statute clearly shows that continuity of custody is a priority consideration and that the standards set forth in section 610(b)(3) must be satisfied before the "best interest" considerations of section 602 can be involved. The Commissioners' Note to section 409(b) of the Uniform Marriage and Divorce Act, from which section 610(b) was copied almost verbatim, provides, in relevant part:

"This section is designed to maximize finality (and thus assure continuity for the child) without jeopardizing the child's interest.
＊　＊　＊

Subsection (b) in effect asserts a presumption that the present custodian is entitled to continue as the child's custodian.
＊　＊　＊

The last phrase of subsection (b)(3) is especially important because it compels attention to the real issue in modification cases. Any change in the child's environment may have an adverse effect, even if the noncustodial parent would better serve the child's interest. Subsection (b)(3) focuses the issue clearly and demands the presentation of evidence relevant to the resolution of that issue." 9A Uniform Laws Annotated §409, Commissioners' Note (1973).

In the case of *In re Custody of Harne*, 77 Ill. 2d 414, ___ N.E.2d ___ (No. 51676, filed September 19, 1979), our supreme court cited this language and held that it was the intention of the legislature to make custody modifications more difficult in order to promote stability and continuity in the child's custodial and environmental relationships.

Further, contentions similar to petitioner's, that the standards of section 602 should prevail rather than the standards of section 610, were rejected in *Schiele v. Sager* (Mont. 1977), 571 P.2d 1142, 1145, and in *In re Custody of Dallenger* (Mont. 1977), 568 P.2d 169, 171. In each case the court found that the basic policy consideration underlying section 610 was to preserve custodial continuity, and basing a judgment only on the best interest of the child disregards the provisions of the Act. In *Schiele* the court expressly found that the criteria of the best interest test (section 602) is not put into effect until the petitioning party seeking the custody modification has satisfied the jurisdictional prerequisites of section 610(b)(3). Also see *Gianotti v. McCracken* (Mont. 1977), 569 P.2d 929, 931-32.

The statement relied on in *DeFranco*, that a court may use initial discretion in deciding custody questions where the original custody order

was achieved by agreement of the parties, is limited to the issue of a change of circumstances and is expressly provided for in section 610(b). That section provides that any change in custody must be based on facts arising since the previous order "or that were unknown to the court at the time of the prior judgment." (See *Boggs v. Boggs.*) *DeFranco* does not address the question presented in this case, which is whether the child's present environment seriously endangers the child's physical, mental, moral or emotional health. *Dockum v. Dockum* is not persuasive in light of section 801(b) of the Illinois Marriage and Dissolution of Marriage Act, which makes the new Act applicable to pending actions, unlike section 14—10—133 of the Colorado Revised Statutes 1974, which has been held not to apply to proceedings brought to modify a custody order entered prior to the effective date of the statute. *Spurling v. Spurling* (1974), 34 Colo. App. 341, 526 P.2d 671, 672.

■■ After reviewing the evidence in this case, we find that Debra was not shown to be endangered under the criteria of section 610(b)(3). The drinking problem of Debra's stepfather appears to have abated with the aid of counselling, and she seems to be a well-adjusted child who is doing very well in school and enjoying a full range of extracurricular activities. Therefore, the determination of the trial court was not against the manifest weight of the evidence.

For these reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and CAMPBELL, J., concur.