*In re* CUSTODY OF JENNIFER MAYES *et al.*—(DAVID MAYES, JR., Petitioner-Appellee, *v.* LESLIE MAYES, Respondent-Appellant.)

Third District   No. 79-868

Opinion filed July 22, 1980.

Melvyn H. Berks, of Berks & Marcus, Ltd., of Des Plaines, for appellant.

Lawrence C. Gray, of Galowich & Galowich, of Joliet, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The origins of this appeal can be traced to a petition for dissolution of marriage filed in the circuit court of Will County. The issue raised involves certain actions taken by the circuit court on its own motion when an order regarding child custody was vacated under the provisions of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72).

David Mayes, Jr., the petitioner, was granted a dissolution of his marriage to Leslie Mayes, respondent, on March 16, 1978. Pursuant to a settlement agreement reached by the parties at the time, custody of the two minor children of the marriage, Jennifer Mayes and Matthew Mayes,

was granted to the respondent. Some nine months later, on January 31, 1979, an agreed order was entered by the circuit court changing custody of the two minor children from the respondent to the petitioner.

Three months later, on April 16, 1979, the respondent filed a petition to vacate the January order alleging that her agreement to such order was procured through fraud and coercion. After a hearing on the petition the circuit court found that the petitioner did commit fraud in obtaining the agreed January order. Accordingly, the change in custody ordered in January was vacated. It was not this *vacatur* that provided the impetus for the instant appeal, but rather the action of the trial court in treating the section 72 hearing as a *de novo* hearing on custody and on its own motion in changing custody from the respondent to the petitioner. The respondent appeals the order changing custody, alleging several errors of law.

At the aforementioned hearing the respondent presented evidence in support of her petition to vacate and then rested. As the petitioner began to present his evidence in defense, also elicited was testimony which went to the issue of which parent's custodial care would be in the best interest of the children. Respondent objected that such testimony was not relevant to any issue properly before the court as raised by the pleadings on file. Further, respondent urged that the statutory requirements for a change in custody, *i.e.*, section 610(a) affidavits, were not present in the record. (See Ill. Rev. Stat. 1979, ch. 40, par. 610(a).) The trial court responded that although the petition to vacate did not expressly request a change in custody, it did as a practical matter raise an issue as to the custodial provisions for the minor children. The March 1978 order which was superseded by the allegedly void order of January 1979 provided for a different custodian. The trial court determined that it could not permit the issue of custody to be adjudicated in fact by the indirect means of a motion to vacate without considering evidence as to the welfare of the children. The petitioner was thus allowed to present his evidence, and the respondent was permitted to reopen her case and present evidence regarding the custodial environment which she could provide.

■■ There are essentially two questions presented for our review. First, we are asked to determine whether the court properly injected the question of custody into a hearing on a motion to vacate. Second, if custody was properly an issue before the court, what criteria should be applied to the decision to grant custody. With regard to the first issue, we are reminded that the trial court has extensive powers under the Marriage and Dissolution of Marriage Act to safeguard the welfare of minor children. The court is commissioned by statute with the duty to determine the best interest of the child. (Ill. Rev. Stat. 1979, ch. 40, par. 602.) To aid in its task, the court may, on its own motion, seek the advice of

professional counsel. (Ill. Rev. Stat. 1979, ch. 40, par. 604.) The court has broad authority in custody hearings to bring before the court proper witnesses (Ill. Rev. Stat. 1979, ch. 40, par. 606(b)); to screen the proceedings from public gawking (Ill. Rev. Stat. 1979, ch. 40, par. 606(c)); and to impound some or all of the evidence in the proceeding (Ill. Rev. Stat. 1979, ch. 40, par. 606(d)). Where necessary to protect the best interests of the child, the court may appoint special counsel to represent the child's interests, again, on the court's own motion. (Ill. Rev. Stat. 1979, ch. 40, par. 506.) Clearly, the framers of the Marriage and Dissolution of Marriage Act placed upon the trial judge great responsibility for the welfare of the dependent children; equally clear is the grant of concomitant authority and discretion to carry out that responsibility.

In the case at bar the issue of custody had not been judicially determined prior to the hearing in question. On prior occasions the court had ratified agreements and stipulations of the parties as to fitness, but there had never been evidence heard concerning the custodial opportunities that either the petitioner or respondent could provide.

On the hearing of respondent's petition, the circuit court was for the first time faced with a situation where the parties no longer agreed. The court was faced with a *de facto* custody decision. That is, although the issue presented by the pleadings was strictly limited to petitioner's alleged fraud, the practical effect of the decision on the petition to vacate was to determine the custodial arrangements for Jennifer and Matthew. We find incredible the suggestion that the trial court, clothed with the duty to protect the welfare of the minor children, should be powerless under these limited circumstances to raise the custody issue by its own motion. We find it illogical that the trial court should be faced with the prospect of in effect ordering a custodial change without a judicial inquiry having been conducted even at the time of the dissolution. The law does not dictate such incongruous procedure.

"[The Civil Practice Act] amalgamates into one petition the various types of relief available at common law under numerous writs and abolishes the distinction between suits at law and suits in equity. Since *Ellman v. De Ruiter* (1952), 412 Ill. 285, 106 N.E.2d 350, equitable principles have been applied to both the procedural and substantive aspects of the petition." (*Lehman v. Arnold* (1966), 76 Ill. App. 2d 124, 127, 221 N.E.2d 331, 332.) That one petition is the section 72 petition, and among the equitable principles which govern the chancellor's action is the admonition that equity looks to substance and not to form. (*Reese v. Melahn* (1973), 53 Ill. 2d 508, 292 N.E.2d 375.) In substance and in fact, the respondent's petition if granted would have worked a change in the custodian for the minor children. The court below correctly determined that it could not overlook this reality.

In considering what criteria the lower court should employ in making its custody decision, we should establish initially that the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*) makes no express provisions to guide the trial court under this rather unique set of facts, and no prior decisions from this State's reviewing courts are directly on point. Our attention has been focused on several strong public policies which bear on this factual situation with somewhat conflicting results. There is in Illinois a strong public policy which favors the finality of child custody judgments. (*In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499.) Our supreme court has approvingly cited authorities to the effect that insuring the judgment's finality is more important than determining which parent should be the custodian, as any change in the child's environment may have an adverse effect even though the noncustodial parent would better serve the child's interest. (*In re Custody of Harne.*) A presumption exists in favor of the present custodian in order to promote stability and continuity in the child's custodial and environmental relationships. (*In re Custody of Harne; In re Custody of LaMarca* (1979), 78 Ill. App. 3d 26, 397 N.E.2d 31.) In the instant case, if custody were allowed to revert to the respondent under the terms of the March 1978 order, the minor children would have been subjected to the third court-ordered custodial arrangement in less than 1½ years. This example of shuttling minor children between custodians mocks the policy considerations identified by the court in *Harne*. The legal wrangling of a divorce court can leave emotional scars even on the adult parties to the proceedings, and the potential harm to parties in their tender and formative years is yet more pronounced. Under the facts of the case *sub judice*, the trial court could cite the well-reasoned concerns articulated by the *Harne* case as militating against subjecting Jennifer and Matthew Mayes to a disruptive custodial change.

On the other hand, the circuit court found that the petitioner had committed fraud in securing respondent's acquiesence to the January 1979 order. We find another policy deeply ingrained in the jurisprudence of this State which provides that a person should not be permitted to benefit from his own fraudulent act. (*Riddlesbarger v. Riddlesbarger* (1944), 324 Ill. App. 176, 57 N.E.2d 901; *Branigar v. Village of Riverdale* (1947), 396 Ill. 534, 72 N.E.2d 201.) How incongruous it would be for an institution that at one time purports to administer fair and just resolutions of disputes to at the same time allow the unwavering application of rigid rules to reward the fraudfeasor for his fraud. In the case before us, to require the respondent to meet the substantial burden necessary to effectuate a change in custody under the statute might well preclude her regaining custody of her children. With the respondent so precluded, the petitioner would have accomplished by fraud the sought after change of

custody. This result would be an affront to the policy of the *Riddlesbarger* decision as well as to our sense of fundamental fairness.

Accepting then that the trial court has an obligation at all times by reason of its statutory duty to consider the best interests of the child, the essential issue is how best to balance the policy favoring custodial continuity with the policy disfavoring the bounty of fraud. If we were only concerned with the former policy, we would require respondent to prove that the present environment seriously endangered the health of the children. (Ill. Rev. Stat. 1979, ch. 40, par. 610(b).) If we were only concerned with the latter policy, we would award custody to respondent and insure that petitioner gained nothing from his fraud. The trial court adopted a reasonable middle course which recognizes the two policies and attempts to effectuate both. The trial court considered the matter of Jennifer and Matthew's custody as if the hearing were a trial *de novo*. The court below did not require the respondent to prove a serious danger or even a change in circumstance. To do so would have legitimized the fraudulently obtained order and thereby rewarded the petitioner for his transgression. Similarly, the court below did not automatically shuttle the children into yet another custodial change. To do so would have disregarded the children's adjustment to home, school, and community. By applying the "best interest" factors of section 602(a) (Ill. Rev. Stat. 1979, ch. 40, par. 602(a)) as if in a trial *de novo*, the circuit court fashioned a balanced and judicious integration of two seemingly competing policies.

It must be remembered that the parties before the court are not limited to David Mayes, Jr., and Leslie Mayes. In addition, the court exercises its power over Jennifer and Matthew. Indeed, it could be persuasively argued that the order rendered below will have far more profound effect upon the lives of the children than upon the lives of the adult parties. An order that would be equitable as between the adult parties alone loses its just composition when the interests of the children are injected into the deliberations. We hold that under these unique circumstances the circuit court applied the appropriate standard to determine the custody of the minor children.

It cannot persuasively be argued that the standard applied in the court below fails to take cognizance of the statutory requirements for modification of custody. (See generally Ill. Rev. Stat. 1979, ch. 40, par. 610.) As we have previously stated, there are no provisions in the statute which contemplate this unique set of facts. The statute is silent. Moreover, to apply section 610 to the instant case as respondent urges would, in the words of Justice William Brennan, turn on its head the manifest purpose of the statute. (See *National Broiler Marketing v. United States* (1978), 436 U.S. 816, 56 L. Ed. 2d 728, 98 S. Ct. 2122, Brennan, J., dissenting.) Respondent would cast upon the current custodial parent the burden of

preventing yet another shift in custody. We believe well-reasoned legislative policy is thwarted when the statutory preference for custodial continuity is so applied.

■■ There is every indication in the record that the court below permitted respondent an opportunity to present her case. Although she consistently held that custody was not an issue, she was permitted to reopen her proofs to meet petitioner's evidence. No time was requested to prepare a further response and no error in that regard is here alleged. The evidence in the record supports the circuit court's order that the best interest of Jennifer and Matthew would be served if petitioner were granted custody. Accordingly, that order is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.