*In re* MARRIAGE OF JOHN H. CARLSON, Petitioner-Appellant, and JANIS L. CARLSON, Respondent-Appellee.

First District (1st Division)    No. 80-1506

Opinion filed November 9, 1981.

Jerome A. DePalma, Richard J. Belmonte, and Scott B. Zolke, all of Chicago, for appellant.

Jacobs, Camodeca & Timpone, of Chicago (William R. Jacobs, II, and Jerome Marvin Kaplan, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner John H. Carlson appeals from a judgment partially vacating a judgment of dissolution of marriage pursuant to section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 72.) The judgment of dissolution incorporated a written separation agreement which provided for division of the parties' property and award of custody of the parties' two minor children to petitioner. The court modified the prior judgment by declaring null and void the marital settlement and entering a temporary order allowing for joint custody of the minor children and transferring physical custody of the children to respondent Janis L. Carlson.

On appeal, petitioner contends that (1) respondent was estopped to attack the validity of the separation agreement; (2) the trial court erred in determining that petitioner coerced, compelled and induced respondent to enter into the separation agreement because (a) the trial court's finding of inducement and coercion was not supported by clear and convincing evidence, and (b) the separation agreement was not unconscionable; (3) petitioner's counsel was improperly examined as a witness under section 60 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60); and (4) the trial court erred in ordering the transfer of the physical custody of the parties' two minor children to respondent.

Petitioner and respondent were married on August 3, 1974. The parties' first child was born on December 30, 1975; the second, on June 21, 1977. For some time prior to May of 1979, the parties began experiencing a considerable amount of difficulty with their marriage. They ceased sleeping together as husband and wife on March 1, 1979. In May of 1979, petitioner sought marriage counseling, in which respondent refused to take part.

Shortly thereafter petitioner employed a private detective firm. During the Memorial Day weekend, respondent left the marital residence located in South Holland, Illinois, and went to Bureau, Illinois. During that weekend, respondent engaged in sexual relations with the man she later married.

Upon respondent's return to the marital home, she consulted an attorney. On June 12, 1979, respondent executed a petition for dissolution of marriage. On or about June 15, 1979, respondent informed petitioner of her meeting with the attorney. After being so informed, petitioner asked respondent not to file for marital dissolution.

On June 18, 1979, petitioner received a telephone call from respondent's foster father, Reverend Ronald Brown. The Reverend Brown had been informed by Debbie Brown, his daughter, that respondent was

having an affair with another man. During the telephone conversation petitioner revealed that he had employed detectives and had been advised that respondent was involved with another man.

On July 3, 1979, respondent's attorney filed on behalf of respondent an action for marital dissolution. Petitioner was served with summons on July 10, 1979. Respondent had discharged her attorney sometime in the early part of July, unaware that a case had been filed on her behalf. The case was subsequently dismissed on July 24, 1979.

On July 14, 1979, the parties met at the marital home with the Reverend and Mrs. Brown, and with petitioner's father and brother. Reverend Brown testified that during that meeting both petitioner and petitioner's father stated that, based upon the evidence they had against respondent, they could take the children from her and leave her with nothing. Respondent testified that at the meeting on July 14, 1979, petitioner told her that she did not deserve the children, that she was a tramp, that she had sinned against him, that she was a "lousy" mother, that he would take the children away from her no matter what he had to do, leave her with nothing and put her in the streets where she belonged. She testified that petitioner made continuous threats that he would take the children away from her and either put them in a foster home or take them to Sweden. She was told by her husband that his father's relatives would be more than happy to raise the children in Sweden.

The following day, July 15, 1979, respondent stated that she was leaving to be with the man she subsequently married. Shortly thereafter petitioner retained attorney Jerome DePalma. On July 27, 1979, petitioner and respondent went to DePalma's office. Petitioner testified that he introduced respondent to DePalma and stated that the parties had come to an agreement and that they wanted to dissolve their marriage. He testified that respondent did not say very much and that she said nothing specific. Petitioner testified that DePalma inquired as to the nature of the property settlement they agreed upon. Petitioner testified that respondent had nothing to say relative to the agreement. Petitioner explained to DePalma that the parties had reached an agreement as to specifics with regard to their marital property. Respondent testified that prior to going to DePalma's office the first time she did not have any settlement discussions with petitioner. She also stated that when she went to De-Palma's office for the first time she had no recollection of any discussions which occurred in that office.

The parties returned to DePalma's office on August 2, 1979. DePalma presented to the parties a property settlement, a petition for dissolution, an answer and a quit-claim deed transferring respondent's interest in the marital home to petitioner. As respondent read these documents, DePalma read aloud. After stating that she understood the terms of the *pro se*

appearance, answer, property settlement and quit-claim deed, respondent signed each document. Respondent also executed a letter stating that DePalma was not her attorney, that she understood the importance of having counsel to protect her interest, but that she did not desire to retain her own attorney. Respondent was requested to and did read this letter, stating that she understood its contents. DePalma testified that he did not advise respondent that the division of marital property was not related to marital misconduct. Under the terms of the agreement, petitioner was to be awarded custody of the parties' two children, the marital home and the parties' 1975 Ford Torino automobile. Respondent was to be awarded certain household items and $55 per week for 16 weeks.

Respondent testified that while she was in DePalma's office papers were handed to her and she was asked to read them. She stated that she was given only two minutes to look them over and handed them back. She was not aware that she was being charged with adultery. She testified that she had no recollection of signing a deed to the property at the time of the meeting. She stated that the total length of time in the office was not more than 20 minutes. She was not given nor did she take any documents with her when she left. She never received any mail from DePalma thereafter. Respondent also testified that in the summer of 1979 petitioner stated that the custody of the children would be returned to her after she set up housekeeping and obtained a job.

DePalma testified that he mailed a copy of the judgment of dissolution of marriage to respondent at the address in South Holland, Illinois. Respondent testified that she first saw a copy of the judgment of dissolution of marriage when it was given to her by petitioner in November of 1979.

Mildred Dugan testified that she had known respondent since birth. She had an opportunity to observe respondent in relation to the parties' two children for a period of two years prior to the separation of the parties and stated she observed that the children always seemed to be well taken care of and were always well-dressed. They looked as though they were well nourished. When respondent came to visit her, she always brought well-prepared food for the children. When the children were small, she would bring juice and baby food and prepare the food in Dugan's home. Dugan stated that in her opinion respondent was a good mother who was always thoughtful of her children, over-protective of them, and never neglected them. The Reverend Brown testified that respondent was not neglectful of the children. However, petitioner testified that respondent was not a fit and proper mother.

The trial court found that petitioner had coerced and induced respondent to enter into the separation agreement. The court also found that the agreement was unconscionable. The court modified the prior

judgment by declaring null and void the marital settlement and entering a temporary order allowing for joint custody of the minor children and transferred physical custody of the children to respondent. Petitioner appeals.

██ Petitioner in his brief raises, for the first time in this cause, the contention that respondent is estopped by her subsequent remarriage to attack the validity of the separation agreement. However, estoppel is an affirmative defense which must be affirmatively pleaded (Ill. Rev. Stat. 1979, ch. 110, par. 43(4)) and is considered to be waived when not alleged. (*Estes Co. v. Employers Mutual Casualty Co.* (1980), 79 Ill. 2d 228, 402 N.E.2d 613; *County of Cook v. Priester* (1976), 62 Ill. 2d 357, 342 N.E.2d 41; *Collins v. Collins* (1958), 14 Ill. 2d 178, 151 N.E.2d 813.) We find that because the issue of estoppel was not presented to the lower court, it is waived.

Petitioner's second contention is that the trial court erred in setting aside the parties' separation agreement because (1) the trial court's finding that petitioner induced and coerced respondent to enter into the agreement was not supported by clear and convincing evidence, and (2) the trial court erred in finding that the separation agreement was unconscionable.

A motion for relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) is addressed to the equitable powers of the court. (*Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348; *Davis v. Chicago Transit Authority* (1980), 82 Ill. App. 3d 987, 403 N.E.2d 615; *Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 360 N.E.2d 1355.) Whether the petition should be granted lies within the sound discretion of the court and depends upon the facts and equities presented. (*Davis; Chase v. Cummingham* (1978), 64 Ill. App. 3d 54, 381 N.E.2d 27; *Lammert; Goldman v. Checker Taxi Co.* (1967), 84 Ill. App. 2d 318, 228 N.E.2d 177.) However, a section 72 petition is not intended to relieve a party from the consequences of his own mistake or negligence. (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 165 N.E.2d 294.) Furthermore, this court is justified in disturbing the judgment of the trial court only when it finds that the discretion vested in the trial court has been abused. *Davis; Chase; Lammert; George F. Mueller & Sons, Inc. v. Ostrowski* (1974), 19 Ill. App. 3d 973, 313 N.E.2d 684.

██ Section 502(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 502(b)) has changed Illinois law with respect to determining the validity of separation agreements. (*In re Marriage of Miller* (1981), 98 Ill. App. 3d 1084, 424 N.E.2d 1343.) Pursuant to section 502(b) the terms of a separation agreement, except those providing for the support, custody and visitation of children, are binding upon the court unless it finds that the agreement is unconscionable. However, this section does not eliminate many of the traditional grounds

for setting aside settlement agreements, including fraud, coercion and violation of any rule of law, public policy or morals. (Ill. Ann. Stat., ch..40, par. 502, Historical and Practice Notes (Smith-Hurd 1980).) Evidence that the agreement was entered into because of coercion, fraud or duress must be clear and convincing in order for courts to set aside the agreement. (*In re Marriage of De Frates* (1980), 91 Ill. App. 3d 607, 414 N.E.2d 1188; *Beattie v. Beattie* (1977), 53 Ill. App. 3d 501, 368 N.E.2d 178.) Furthermore, the propriety of a separation agreement must be determined in the light of the positions and needs of the individuals concerned, and not upon the circumstances presented and conclusions reached in another case. *Horwich v. Horwich* (1979), 68 Ill. App. 3d 518, 386 N.E.2d 620.

We find that the judgment incorporating the separation agreement was properly vacated because the agreement is unconscionable.

The Historical and Practice Notes to section 502(b) (Ill. Ann. Stat., ch. 40, par. 502, Historical and Practice Notes, at 401 (Smith-Hurd 1980)) state:

> "* * * The standard [of unconscionability] as it relates to separation agreements includes 'protection against overreaching, concealment of assets, and sharp dealing not consistent with the obligations of marital partners to deal fairly with each other.' Uniform Marriage and Divorce Act (9A U.L.A.) §306, Commissioners' Note at 137. The Commissioners' Note further provides:
>> In order to determine whether the agreement is unconscionable, the court may look to the economic circumstances of the parties resulting from the agreement, and any other relevant evidence such as the conditions under which the agreement was made, including the knowledge of the other party. If the court finds the agreement not unconscionable, its terms respecting property division and maintenance may not be altered by the court. . . .
>
> Uniform Marriage and Divorce Act (9A U.L.A.) §306, Commissioners' Note at 137."

An unconscionable bargain has been defined as one "which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." (*Hume v. United States* (1889), 132 U.S. 406, 410, 33 L. Ed. 393, 395.) The term "unconscionability" includes "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (*Williams v. Walker-Thomas Furniture Co.* (D.C. Cir. 1965), 350 F.2d 445, 449.) A contract is unconscionable when it is improvident, totally one-sided or oppressive. *Walter E. Heller & Co. v. Convalescent Home of the First Church of Deliverance* (1977), 49 Ill.

App. 3d 213, 365 N.E.2d 1285; *Neal v. Lacob* (1975), 31 Ill. App. 3d 137, 334 N.E.2d 435.

■■ Under the terms of the agreement, petitioner was to be awarded custody of the parties' two children, the marital home and the parties' 1975 Ford Torino automobile. Respondent was to be awarded certain household items and $55 per week for 16 weeks. We find that the terms of the agreement were unreasonably favorable to petitioner and the circumstances surrounding the agreement's execution indicate that respondent did not make a meaningful choice. Therefore, we conclude that the trial court correctly found the agreement to be unconscionable and properly set aside that portion of the judgment for dissolution which incorporated the separation agreement.

In view of this conclusion, we find it unnecessary and accordingly abstain from consideration of respondent's contention that the agreement should be set aside because of clear and convincing evidence that respondent was induced and coerced to enter into the separation agreement.

■■ Petitioner's third contention is that the trial court erred when it permitted respondent to examine petitioner's counsel as an adverse party under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 60.) The trial court found that petitioner's attorney was properly called as a witness pursuant to section 60 because under the facts here, in which he is charged with fraud, he would be regarded as defending the action. We find no error in the allowance of examination of petitioner's counsel pursuant to section 60. Petitioner's counsel testified as to the circumstances surrounding the execution of the agreement. We do not find it improper to call opposing counsel for examination as an adverse witness under section 60 where the examination does not extend to matters of privileged communication between attorney and client. See *Club Aluminum Co. v. American Indemnity Co.* (1936), 290 Ill. App. 487, 8 N.E.2d 526.

Petitioner's final contention is that the trial court improperly ordered the custody of the parties' two minor children transferred to respondent because at the hearing on the section 72 petition no evidence was presented as to whether petitioner's or respondent's custodial care would be in the best interest of the children. We note, however, that it is more accurate to state that the trial court's order (1) vacated that portion of the prior judgment of dissolution incorporating the parties' separation agreement which awarded custody of the parties' children to petitioner, and (2) awarded temporary custody to the parties jointly and physical custody to respondent.

Respondent, relying on *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 403 N.E.2d 1036, contends that the portion of the trial court's order awarding temporary custody to the parties jointly and physical custody to respondent is not appealable.

■■ Supreme Court Rule 304(b)(3) makes a judgment granting any of the relief prayed for in a petition under section 72 final and therefore appealable without any specific finding. (Ill. Rev. Stat. 1979, ch. 110A, par. 304(b)(3).) We find that the award of temporary custody was part of the relief prayed for in the section 72 petition and is therefore a final and appealable order without any specific finding.

■■ Turning now to the merits of the issue, we find that the trial court improperly awarded temporary custody to the parties jointly and physical custody to respondent. Pursuant to section 603(a) (Ill. Rev. Stat. 1979, ch. 40, par. 603(a)), a court may award temporary custody on the basis of affidavits or, after a hearing, under the best interest of the child standard set forth in section 602. Section 602 (Ill. Rev. Stat. 1979, ch. 40, par. 602) does not require the trial court to make findings; rather, the court is directed to consider "all relevant factors" including certain specified ones. (*In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 402 N.E.2d 831.) Section 602 does, however, require that the record contain sufficient evidence concerning the specified factors, which include: (1) the wishes of the child's parent or parents as to his custody; (2) the wishes of the child as to his custodian; (3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest; (4) the child's adjustment to his home, school and community; (5) the mental and physical health of all individuals involved; and (6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person but witnessed by the child. All six factors must be considered by the court, although written findings of fact or other recital of these factors are not required by this section to sustain a custody judgment. *In re Marriage of Atkinson; In re Custody of Melear* (1979), 76 Ill. App. 3d 706, 395 N.E.2d 208.

In *In re Custody of Mayes* (1980), 86 Ill. App. 3d 644, 409 N.E.2d 12, the court found that the trial court there properly applied the "best interest" factors of section 602(a) (Ill. Rev. Stat. 1979, ch. 40, par. 602(a)) where, after vacating a judgment agreed to by the parties as to the custody of the children, the court was faced with a *de novo* custody decision.

■■ Here, after vacating that portion of the judgment of dissolution awarding custody of the parties' two minor children to petitioner, the trial court was faced with making a *de novo* determination regarding custody of the children. We find that the evidence presented at the hearing relating to the section 602 factors was insufficient. The testimony did not include facts and information concerning each of the factors listed in section 602. Accordingly, we affirm that portion of the trial court's order vacating that portion of the judgment for dissolution which incorporated

the separation agreement and reverse that portion which awarded custody to the parties jointly and physical custody to respondent and remand the cause for further proceedings.

Affirmed in part; reversed in part and remanded.

CAMPBELL, P. J., and GOLDBERG, J., concur.